UPON REHEARING EN BANC
HUMPHREYS, Judge.
Appellants George F. Robinson and Elisa K. Robinson (collectively, “the Robinsons”) appeal their multiple convictions for contributing to the delinquency of a minor, a violation of Code § 18.2-371. Elisa Robinson contends that the trial court erred in denying her motion to suppress, reasoning that, because the investigating police officer was located in the curtilage of their home when he witnessed the illicit activity, the resulting search violated her Fourth Amendment right to be free from unreasonable searches and seizures. George Robinson, in contrast, argues that, although the police officer did not violate the Fourth Amendment when he initially entered the premises, the officer lacked the exigent circumstances necessary to permit his further intrusion onto the property. For the following reasons, we disagree with both appellants’ arguments and, therefore, affirm their convictions.
*540 I. BACKGROUND
In accord with our usual standard of review, on the appeal of a denial of a motion to suppress, we view the evidence and all reasonable inferences flowing from the evidence in a light most favorable to the Commonwealth, the party prevailing below. Garcia v. Commonwealth, 40 Va.App. 184, 189, 578 S.E.2d 97, 99 (2008); Sabo v. Commonwealth, 38 Va.App. 63, 69, 561 S.E.2d 761, 764 (2002). So viewed, the evidence in this case establishes the following.
On August 16, 2002, the Albemarle County Police Department received three separate telephone calls reporting an alleged underage drinking party at the Robinsons’ home. Corporal Scott Cox was dispatched to investigate these allegations, and he arrived at the Robinsons’ home at approximately 11:00 p.m. From the state road in front of the house, Officer Cox saw between ten and twenty cars parked on the state road, and he also saw two or three cars parked on the left-hand side of the driveway. From that position, Officer Cox could also see the house, the front porch, the front door, and the front yard, although he could not see the backyard or the end of the driveway. The floodlights above the front door were turned on, and the lights along the sidewalk leading to the front door were also illuminated.
Officer Cox, who was driving a marked police car -with its headlights on, “got on the radio” and told the other officers in the area to “start heading this way” because “[i]t appears that there’s a party.” Officer Cox then turned into the driveway and started to drive towards the house. Almost immediately after pulling into the driveway, Officer Cox saw several additional parked vehicles near the right side of the driveway, as well as “several parked vehicles near the side of the house.” Officer Cox continued up the driveway in his police car. From his position inside the police car, he began to see some “activity” in the backyard. Before reaching the point where the walkway to the front door intersects with the Robinsons’ driveway, Officer Cox saw two individuals holding clear beer bottles. The individuals, both of whom appeared to be under *541 age, were standing by a pine tree about seven or eight yards away from Officer Cox’s police car. The two juveniles “looked at [Officer Cox], looked at the house, yelled ‘cops,’ dropped the beer bottles, and ran down a fence line toward the woods.” Officer Cox then pulled his police vehicle behind a car parked by the garage, and he looked to his left. From that vantage point, “[h]e saw juveniles running toward the woods.” Also, “[h]e could see a patio table covered with beer bottles and noticed beer bottles strewn about the backyard.” Officer Cox got out of his car, “yelled for people to stop running, and radioed other officers who were waiting off the property that kids were running east into the woods.”
After radioing the other officers, Officer Cox proceeded into the backyard “to look for the juvenile host.” According to Officer Cox, he went into the backyard because he “[w]anted to find out what was going on, [and] find out who the people were that were running away,” because he “was worried for their safety.” After speaking with one of the party attendees, Officer Cox then “walk[ed] up to the back door of [the] house” and knocked on a clear glass sliding door. From outside the residence, he could see “two adults sitting at the kitchen table.”
The Robinsons were arrested, and each was charged with nineteen counts of contributing to the delinquency of a minor. Both parties filed a motion to suppress, contending that Officer Cox was unlawfully present on their property when he viewed the illicit activity.
During the suppression hearing, Officer Cox testified that his police car was next to a bush planted by the front sidewalk when he “clearly” saw “two male juveniles standing on the other side of the tree holding beer bottles.” To clarify the position in the driveway from which the officer observed the juveniles, the trial court asked Officer Cox, “So you were at the bush when you saw the two individuals?” Officer Cox responded, “That’s right.”
By letter opinion dated August 4, 2003, the trial court held that Officer Cox “planned to enter the property to investigate *542 the allegations of underage consumption of alcohol.” The trial court also observed that, “[a]s Cox went down the driveway, he could not see the backyard or the garage,” but that “[h]e could see the house, the front yard, and the front porch.” Additionally, the trial court found that “[t]here were no signs posted” — such as a “no trespassing” sign — at the entrance to the driveway.
Based on this evidence, the trial court found that the Robinsons’ driveway was not part of the curtilage of the house and, therefore, concluded that “Cox’s presence there [did] not implicate the Fourth Amendment.” The court additionally held that Officer Cox’s presence in the Robinsons’ driveway was justified by the officer’s right to conduct a “knock and talk,” that is, to approach a home and knock on the front door to speak with an occupant. Under either of the preceding rationales, the trial court concluded that “Cox was in a lawful place in the driveway” when he observed the two juveniles drinking beer, and his observations were therefore admissible pursuant to the plain view exception to the warrant requirement. Finally, the trial court concluded that Officer Cox’s entry into the backyard was justified because he had both probable cause to believe that a crime was being committed and exigent circumstances “given the likelihood of evidence being destroyed and juveniles running away.” Accordingly, the trial court denied the Robinsons’ motions to suppress.
The trial court convicted each appellant of nine counts of contributing to the delinquency of a minor. Both parties appealed their convictions to this Court.
II. PROCEDURAL HISTORY
On appeal, a three-judge panel, with one judge dissenting, affirmed the Robinsons’ convictions. See Robinson v. Commonwealth, 45 Va.App. 592, 612 S.E.2d 751 (2005). The panel majority reasoned that, although the driveway was part of the curtilage of the home, Officer Cox’s presence did not violate any reasonable expectation of privacy, and, therefore, his conduct did not implicate the Fourth Amendment. See id. *543 By orders dated June 21, 2005, this Court granted the Robin-sons’ petitions for rehearing en banc and stayed the mandates of the panel opinion. See Elisa Robinson v. Commonwealth, 46 Va.App. 24, 614 S.E.2d 667 (2005); George Robinson v. Commonwealth, 46 Va.App. 23, 614 S.E.2d 667 (2005).
During the en banc oral arguments, the Commonwealth conceded that Officer Cox was located on the curtilage of the Robinsons’ home when he observed the unlawful activity. Accordingly, this question — which was in dispute before the three-judge panel, see Robinson, 45 Va.App. at 604-07, 612 S.E.2d at 757-58 — is no longer at issue on appeal. However, the Commonwealth maintains that, although Officer Cox intruded upon the curtilage, he did not violate the Fourth Amendment because, for the reasons stated in the majority panel opinion, the Robinsons lacked a reasonable expectation of privacy in the area from which he viewed the illegal activity.[1]
Also during the en banc oral arguments, George Robinson conceded that he lacked a reasonable expectation of privacy in their driveway on the night in question. He argues, however, that the officer’s further intrusion onto the property was unconstitutional, reasoning that the officer — once his suspicions of underage drinking had been validated — should have left the property or otherwise secured the premises and then obtained a search warrant. This argument was not previously raised before the three-judge panel and, thus, was not addressed in the panel opinion.[2]
*544 Elisa Robinson, in contrast, continues to maintain that she possessed a reasonable expectation of privacy in the driveway and, thus, argues that Officer Cox violated the Fourth Amendment when he entered the property without a warrant. However, Elisa Robinson concedes that, if the officer was legitimately present on the premises when he witnessed the illegal activity, the officer’s further intrusion onto the property was justified because the officer possessed the requisite exigent circumstances.[3]
III. ANALYSIS
Although “ ‘[w]e are bound by the trial court’s findings of historical fact unless ‘plainly wrong’ or without evidence to support them,’ ... we review de novo the trial court’s application of legal standards ... to the particular facts of the case.” McCracken v. Commonwealth, 39 Va.App. 254, 258, 572 S.E.2d 493, 495 (2002) (en banc) (quoting McGee v. Commonwealth, 25 Va.App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc)) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)). Further, “[i]n reviewing a trial court’s denial of a motion to suppress, ‘the burden is upon [the appellant] to show that the ruling ... constituted reversible error.’ ” McGee, 25 Va.App. at 197, 487 S.E.2d at 261 (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).
*545 For the reasons that follow, we hold that, contrary to Elisa Robinson’s position, Officer Cox did not violate the Fourth Amendment when he drove up the driveway of the Robinsons’ home. We further hold that, contrary to George Robinson’s position, once the officer observed the teenagers fleeing from the backyard, his further intrusion onto the property was permissible pursuant to the exigent circumstances exception to the warrant requirement. Accordingly, we affirm both parties’ convictions.
A. Elisa Robinson: Implied Consent
Upon rehearing en banc, Elisa Robinson[4] maintains that Officer Cox violated the Fourth Amendment when he entered the driveway of the property without first obtaining a search warrant. Initially, we agree that, “absent (1) exigent circumstances and probable cause or (2) consent, law enforcement agents cannot enter the curtilage of a person’s home either to search or seize without previously obtaining a warrant.” Jefferson v. Commonwealth, 27 Va.App. 1, 16, 497 S.E.2d 474, 481 (1998). Although Officer Cox possessed neither probable cause nor exigent circumstances which would justify a search when he initially entered the property, we hold that, on the night in question, Robinson impliedly consented to have members of the public — including police officers — enter the premises in an attempt to contact the residents of that property. Because Officer Cox had not exceeded the scope of this implied consent when he viewed the illicit activity, we affirm her convictions.
1.
It is generally recognized that, absent any affirmative attempts to discourage trespassers, owners or possessors of private property impliedly consent to have members of the general public intrude upon certain, limited areas of their property. As we have noted,
*546 “People commonly have different expectations, whether considered or not, for the access areas of their premises than they do for more secluded areas. Thus, we do not place things of a private nature on our front porches that we may very well entrust to the seclusion of a backyard, patio or deck. In the course of urban life, we have come to expect various members of the public to enter upon such a driveway, e.g., brush salesmen, newspaper boys, postmen, Girl Scout cookie sellers, distressed motorists, neighbors, friends. Any one of them may be reasonably expected to report observations of criminal activity to the police.”
Shaver v. Commonwealth, 30 Va.App. 789, 796, 520 S.E.2d 393, 397 (1999) (quoting State v. Corbett, 15 Or.App. 470, 516 P.2d 487, 490 (1973)).
 This invitation, where it exists, extends only to those areas of the property that would be used when approaching the residence in an ordinary attempt to speak with the occupants. See id. Thus, areas of the curtilage that a visitor could reasonably be expected to cross when approaching the front door — for example, the driveway, front sidewalk, and front porch — are generally exempted from Fourth Amendment protection. See, e.g., State v. Clark, 124 Idaho 308, 859 P.2d 344, 349 (1993) (“There is an implied invitation for the public to use access routes to the house, such as parking areas, driveways, sidewalks, or pathways to the entry, and there can be no reasonable expectation of privacy as to observations which can be made from such areas.”). As a result, if the property owner has impliedly consented to have members of the public use a particular “path” when attempting to access his home, he has waived any reasonable expectation of privacy in areas of the curtilage associated with that “path.” See id.
By extension, the same implied consent is extended to police officers who enter the curtilage and, while on the premises, restrict their conduct to those activities reasonably contemplated by the homeowner. See Shaver, 30 Va.App. at 796, 520 S.E.2d at 397 (“ ‘If one has a reasonable expectation *547 that various members of society may enter the property in their personal or business pursuits, he should find it equally likely that the police will do so.’ ” (quoting Corbett, 516 P.2d at 490)); see also State v. Cada, 129 Idaho 224, 923 P.2d 469, 477 (1996) (“[T]he direct access routes to the house, including parking areas, driveways and pathways to the entry, are areas to which the public is impliedly invited, and [ ] police officers restricting their activity to such areas are permitted the same intrusion and the same level of observation as would be expected from a ‘reasonably respectful citizen.’”); State v. Gabbard, 129 Or.App. 122, 877 P.2d 1217, 1221 (1994) (“An officer’s right to go to the front door of a house is based on implied consent to allow visitors to take reasonable steps to make contact with the occupant.”).[5] Accordingly, “[w]hen police enter onto private property ... and restrict their entry to places that other visitors would be expected to go, such as walkways, driveways, or porches, any observation made from these areas is permissible under the Fourth Amendment.” Trimble v. State, 816 N.E.2d 83, 88 (Ind.Ct.App.2004); see also State v. Maxfield, 125 Wash.2d 378, 886 P.2d 123, 134 (1994) (“If a law enforcement officer or agent does not go beyond the area of the residence that is impliedly open to the public, such as the driveway, the walkway, or an access route leading to the residence, no privacy interest is invaded.”).
The landowner’s implied consent is generally presumed to exist absent evidence of an affirmative intent to exclude the public from the premises. See, e.g., People v. Kozlowski, 69 N.Y.2d 761, 513 N.Y.S.2d 101, 505 N.E.2d 611, 612 (1987) (“Absent evidence of intent to exclude the public, the entryway to a person’s house offers implied permission to approach and knock on the front door.”); State v. Somfleth, 168 Or.App. 414, 8 P.3d 221, 227 (2000) (“A homeowner can abrogate the presumption of implied consent to approach the front door by undertaking sufficient steps to exclude casual visitors from the front yard.”). Here, then, we must consider *548 whether, under the totality of the circumstances, Robinson affirmatively intended to exclude members of the public from her premises. See generally State v. Wyatt, 131 Idaho 562, 961 P.2d 653, 656 (1998) (“The determination whether a particular citizen had a legitimate expectation of privacy depends upon the unique facts of each case. We therefore examine the citizen’s efforts to protect his own privacy from observation by the general public, taking into account norms of social conduct and the nature of the premises.”).[6]
Factors that may be particularly relevant to this determination include, inter alia: (1) whether the homeowner has erected any physical barriers, such as gates or fences, across the entrance to the property, and (2) whether the homeowner has posted signs, such as “no trespassing” or “private property” signs, indicating a desire to exclude the public from the premises. See, e.g., State v. Christensen, 131 Idaho 143, 953 P.2d 583 (1998) (no implied invitation to enter where the entrance to the driveway was obstructed by a closed gate posted with a “no trespassing” sign); State v. Pacheco, 101 S.W.3d 913, 919 (Mo.Ct.App.2003); State v. McIntyre, 123 Or.App. 436, 860 P.2d 299, 301 (1993) (“[C]ourts must consider all surrounding circumstances, including the existence of a fence, to determine the residents’ intent.”); *549 State v. Ridgway, 57 Wash.App. 915, 790 P.2d 1268, 1265 (1990) (holding that marijuana recovered from doorstep should have been suppressed because police observed the marijuana after walking around a closed gate and evading guard dogs while approaching the house).
Here, Robinson did not erect any physical barriers barring entry onto her property. There were no gates, fences, wires, highway cones, or other obstacles indicating that members of the public were not welcome to use the driveway and front sidewalk in an effort to speak with the occupants of the premises. Nor did she post any signs indicating that the public in general — or police officers in particular — were not welcome to enter the property and approach the front door. Considering the totality of the circumstances, we conclude that, on the night in question, Robinson impliedly consented to have members of the general public — including law enforcement officers — enter the driveway and front sidewalk of her premises.
2.
Although we hold that Robinson extended an implied invitation to the public to enter her property and approach the front door, we must also consider whether Officer Cox’s conduct on the night of the party exceeded the scope of that implied consent. Ultimately, whether the officer exceeded the scope of the implied consent “cannot be determined by a fixed formula,” but must instead “be based on the facts and circumstances of each case.” People v. Thompson, 221 Cal. App.3d 923, 270 Cal.Rptr. 863,874 (1990).[7]
“[U]nder normal circumstances, uninvited visitors coming to a residence to speak with an owner or resident are expected to come to the residence’s most direct, obvious, and *550 prominent entryway, which in most cases is the front door.” Trimble, 816 N.E.2d at 88. These visitors “are also expected to leave by the same route after knocking on the front door and receiving no response,” unless the “nature of the circumstances surrounding the visit” indicate that the visitor “could reasonably be expected to seek out residents through areas other than the front door.” Id. Generally, “a substantial and unreasonable departure from the normal access route will exceed the scope of the implied invitation and intrude upon a constitutionally protected privacy interest.” Clark, 859 P.2d at 350.
Similarly, entering the property late at night, especially if accompanied by the use of subterfuge, may exceed the scope of the implied invitation. As noted by one court,
Furtive intrusion late at night or in the predawn hours is not conduct that is expected from ordinary visitors. Indeed, if observed by a resident of the premises, it could be a cause for great alarm. As compared to open daytime approaches, surreptitious searches under the cover of darkness create a greater risk of armed response — -with potentially tragic results — from fearful residents who may mistake the police officers for criminal intruders.
Cada, 923 P.2d at 478; see also Brown v. State, 392 So.2d 280, 284 (Fla.Dist.Ct.App.1980) (finding that police violated defendant’s reasonable expectation of privacy when they entered defendant’s driveway without a warrant at 1:45 a.m. and arrested him); State v. Cloutier, 544 A.2d 1277, 1280 (Me. 1988) (noting that “the implied invitation extends only to recognized access routes ... and to reasonable times of day ” (emphasis added)); State v. Myers, 117 Wash.2d 332, 815 P.2d 761, 769 (1991) (noting that whether a police officer enters a premises during the daylight hours is relevant in determining whether the scope of the implied consent has been exceeded).
Also, although law enforcement officers who “enter areas of the curtilage which are impliedly open” to the public are “free to keep their eyes open,” State v. Seagull, 95 Wash.2d 898, 632 P.2d 44, 47 (1981), an officer who imple *551 ments an overly intrusive means of investigation, such as the use of binoculars or other sensory-enhancing devices, may exceed the scope of the implied consent. See Cada, 923 P.2d at 477 (“The scope of the implied invitation to enter areas of the curtilage that provide direct access to the house ... may be exceeded where officers employ a particularly intrusive method of viewing.”); Cloutier, 544 A.2d at 1280 (holding that the defendant had no reasonable expectation of privacy in a marijuana plant where, inter alia, the officer “detected the contraband by means of his natural senses”). But cf. State v. Lee, 633 P.2d 48, 51 (Utah 1981) (“[T]he use of a flashlight to assist the natural vision at night does not make an ‘observation’ a ‘search.’ ”).
Here, considering the totality of the circumstances, we conclude that Officer Cox did not exceed the scope of Robinson’s implied consent to enter the premises and approach the front door of her home. Officer Cox entered the driveway, began to drive toward the residence, and, before he reached the area of the driveway where the front walk intersects with the driveway, he saw the minors drinking in the backyard. At that point, Officer Cox had gone no further than any member of the public would have gone in an attempt to contact the owners of the property. He did not stray from the “path” leading directly from the road to the front door (i.e., the driveway and the front sidewalk), nor did he attempt to conduct a general search of the premises through use of an overly intrusive means of investigation.
Moreover, although Officer Cox parked his police car in the parking area by the garage, those portions of the curtilage impliedly open to the public encompass areas “that other visitors would be expected to go,” Trimble, 816 N.E.2d at 88, including “parking areas” in which a visitor might reasonably be expected to leave his vehicle when attempting to contact the residents of the property. See Cada, 923 P.2d at 477 (“[T]he direct access routes to the house, including parking areas, driveways and pathways to the entry, are areas to which the public is impliedly invited____” (emphasis added)); Clark, 859 P.2d at 349 (“There is an implied invitation for the *552 public to use access routes to the house, such as parking areas, driveways, sidewalks, or pathways to the entry____” (emphasis added)). Because the parking area by the garage is at the end of the driveway and directly adjacent to the front sidewalk, Robinson could reasonably expect a visitor to park his vehicle in that area when attempting to contact the residents of the home. Accordingly, Officer Cox did not exceed the scope of the implied consent when he pulled his car into the parking area by the garage.
Also, although Officer Cox entered the curtilage of Robinson’s home at 11:00 p.m., a late hour of the evening, this entry did not necessarily exceed the scope of the implied consent. “Under some circumstances, the mere fact that the intrusion was made late at night may be a factor suggesting that the police conduct was unduly intrusive.” State v. Morris, 131 Idaho 562, 961 P.2d 653, 657 n. 3 (1998). Here, however, the lights along Robinson’s front sidewalk and the lights on the front porch were still illuminated. Also, multiple cars were parked along the driveway and on the public road in front of the house. These factors give rise to a reasonable inference that the landowner’s implied consent to approach the front door of the residence had not yet been rescinded for the night.[8] Also, we note that Officer Cox drove up the driveway with his headlights turned on — the same way that any member of the general public would presumably have approached the house — rather than using subterfuge or the “cover of darkness” in an attempt to disguise his approach. Compare Cada, 923 P.2d at 478 (officers exceeded scope of implied consent where they engaged in a “clandestine intrusion ... under cover of darkness in the dead of night”), with Clark, 859 P.2d at 346 (officers did not exceed scope of implied consent where the officers went to the front door of the residence at 10:00 p.m. to investigate a neighbor’s complaint about a loud *553 party).[9] Considering the totality of the circumstances, we conclude that, on the night in question, the implied invitation to enter Robinson’s premises was still open even at this late hour, and Officer Cox did not exceed the scope of this implied consent when he drove up Robinson’s driveway and parked his car in the parking area by the garage.
Robinson argues, however, that Officer Cox’s subjective intent — specifically, to see if the party attendees “scattered” as he approached the house — renders the entry unconstitutional, reasoning that the officer subjectively intended to conduct a general search of the premises. Because a homeowner who impliedly consents to have law enforcement officers enter the property does not also consent to a general search of that property, Robinson concludes that Officer Cox exceeded the scope of the implied consent by entering the premises while subjectively intending to search the property.
Initially, we agree that, although a property owner’s implied consent generally authorizes law enforcement officers to seek out the occupants of the residence in order to “investigate,” see, e.g., United States v. Hammett, 236 F.3d 1054, 1059 (9th Cir.2001) (“Law enforcement officers may encroach upon the curtilage of a home for the purpose of asking questions of the occupants.”), the scope of this implied consent does not also encompass the right to conduct a general search of the premises, see, e.g., United States v. Bradshaw, 490 F.2d 1097, 1100 (4th Cir.1974) (noting that the officer may not extend the scope of the implied consent to conduct “a search of such premises”); see also Rogers v. Pendleton, 249 F.3d 279, 288 (4th Cir.2001); Alvarez v. Montgomery County, 147 F.3d 354, 358 (4th Cir.1998). Thus, if a *554 law enforcement officer, while searching for evidence of illicit activity, strays from the “path” that is impliedly open to the public, he has exceeded the scope of the implied consent and, as a result, violated the Fourth Amendment.
However, the determination of whether a Fourth Amendment violation has occurred is based on “ ‘an objective assessment of the officer’s actions ... and not on the officer’s state of mind at the time the challenged action was taken.’ ” Limonja, v. Commonwealth, 8 Va.App. 532, 538, 383 S.E.2d 476, 480 (1989) (en banc) (quoting Maryland v. Macon, 472 U.S. 463, 470-71,105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985)); see also Deer v. Commonwealth, 17 Va.App. 730, 734, 441 S.E.2d 33, 36 (1994) (“Attention must be focused on objective reasonableness rather than on the police officer’s subjective intent.”). Although cases from other jurisdictions have inquired into whether the officer subjectively intended to search the property, we note that, in each of those cases, the officer’s subjective intent only became relevant if the officer exceeded the ordinary scope of the implied consent by, for example, invading other areas of the curtilage after attempting a “knock and talk.” See, e.g., Estate of Smith v. Marasco, 318 F.3d 497, 520-21 (3d Cir.2003) (remanding qualified immunity case for further factual determinations where the officers knocked on the front door, the defendant failed to answer, and the officers then entered the backyard of the residence); Alvarez, 147 F.3d at 357 (inquiring into officer’s subjective purpose for entering the backyard where the officers, who were investigating an underage drinking party, approached the front door, noticed a sign that said “Party in Back,” and then went to the backyard to “speak with the party’s host”).
Here, however, Officer Cox had not yet performed a “knock and talk,” nor had he invaded any areas of the curtilage other than those associated with the “path” to the front door. Indeed, when Officer Cox first viewed the illicit activity, he had not yet finished driving up the driveway. Under the circumstances of this case, then, there is no additional intrusion into the curtilage that would necessitate an inquiry into *555 whether Officer Cox subjectively intended to conduct a general search of the property when he first entered the driveway. Accordingly, we hold that Officer Cox’s subjective intent is irrelevant under the circumstances of this case. See Edwards v. Commonwealth, 38 Va.App. 823, 827, 568 S.E.2d 454, 456 (2002) (“The United States Supreme Court has articulated the standard for measuring the scope of an individual’s consent under the Fourth Amendment to be ‘objective reasonableness ....’” (quoting Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991) (internal quotation marks omitted) (emphasis added))); see also McIntyre, 860 P.2d at 302 (holding that “[t]he trial court’s reliance on the officers’ investigative purpose was misplaced” because “ ‘[c]riminal investigation is as legitimate a societal purpose as is census taking or mail delivery1 ” (quoting Corbett, 516 P.2d at 490) (second alteration in original)); cf. Krause v. Penny, 837 F.2d 595, 597 (2d Cir.1988) (dismissing qualified immunity suit where “a reasonable officer ... might [] have [objectively] believed that [the plaintiff] consented to his presence in the driveway”).
Thus, considering the totality of the circumstances, we conclude that, on the night of the party, Robinson impliedly consented to have members of the public — including law enforcement officers — enter her driveway. We further conclude that Officer Cox did not exceed the scope of this implied consent because, by driving up the driveway and parking in the parking area, he went no further than an ordinary member of the public would have gone in an attempt to contact the occupants of the premises. Accordingly, because Robinson extended an implied invitation to enter the property, and because Officer Cox did not exceed the scope of that implied consent, the Fourth Amendment had not been implicated at the point in time when the officer observed the individuals drinking beer and then fleeing into the woods.
Because Officer Cox was legitimately present on the property when he viewed the illegal activity, and because Robinson presents no further arguments in support of her position that *556 the trial court should have granted her motion to suppress,[10] we hold that the trial court did not err in denying the motion to suppress. Accordingly, we affirm her convictions.
B. George Robinson: Probable Cause and Exigent Circumstances
Counsel for George Robinson[11] contends, however, that, once Officer Cox confirmed his suspicion that underage individuals were consuming alcoholic beverages, the officer should have immediately left or otherwise secured the premises and then obtained a search warrant. Any further intrusion into the property, Robinson reasons, including the “search and seizure subsequently conducted in the ... backyard,” violated the Fourth Amendment because the officer lacked the exigent circumstances sufficient to justify the warrantless entry onto the property. For the reasons that follow, we disagree.
As Robinson argues, it is true that, “absent (1) exigent circumstances and probable cause or (2) consent, law enforcement agents cannot enter the curtilage of a person’s home either to search or seize without previously obtaining a warrant.” Jefferson, 27 Va.App. at 16, 497 S.E.2d at 481. Here, as discussed in Part 111(A), supra, and as Robinson concedes, Officer Cox’s initial intrusion into the curtilage was justified because Robinson — by extending an implied invitation to members of the public to enter his driveway — impliedly consented to that limited intrusion. The only remaining question that must be resolved, then, is whether Officer Cox, once he had observed the minors drinking beer and fleeing into the woods, could intrude further into the curtilage without violating Robinson’s constitutional rights. Under the circumstances of this case, we conclude that the entry was justified.
*557 Initially, we note that the facts, when viewed in the light most favorable to the Commonwealth, establish that Officer Cox did not exceed the scope of Robinson’s implied consent until after he had observed the underage individuals drinking alcohol and then fleeing from the scene. Specifically, as discussed above, Robinson had impliedly consented for members of the public to intrude upon certain, limited areas of the curtilage, including the driveway, the sidewalk, the area of the driveway immediately adjacent to the sidewalk, and the parking area at the end of the driveway. Thus, Officer Cox, who was located “at the bush” when he “clearly” saw “two male juveniles standing on the other side of the tree holding beer bottles,” had not exceeded the scope of the implied consent when he initially viewed the illegal activity. And, before Officer Cox could proceed significantly further up the driveway,[12] the individuals “looked at [Cox], ... looked ... towards the back of the house, [ ] yelled ‘cops,’ ... dropped their beer bottles[,] and [then] ran down [the] fence line, towards the woods.” It was only then that Officer Cox parked his car, got out of the police vehicle, and entered the backyard.
Considering these facts, the trial court found that Officer Cox’s subsequent intrusion into the backyard was justified because he possessed both probable cause and exigent circumstances.[13] We agree. Clearly, once the officer observed the *558 seemingly underage individuals holding beer bottles and then fleeing from the police presence, he had probable cause to believe that a crime was being committed. See, e.g., Code § 4.1-305(A) (providing that “[n]o person” under the age of 21 “shall consume, purchase or possess, or attempt to consume, purchase or possess, any alcoholic beverage”); see also State v. Jangala, 154 Or.App. 176, 961 P.2d 246, 247 (1998) (holding that a law enforcement officer had probable cause to believe the crime of furnishing alcohol to a minor was taking place after the officer observed a group of people who appeared to be minors “holding red plastic cups that [the officer] recognized as the type commonly used to serve beer from a keg”).[14] The only remaining issue, then, is whether exigent circum-' stances justified the warrantless entry.
As noted by the Virginia Supreme Court, factors to consider when determining whether exigent circumstances justified a warrantless entry include:
(1) the degree of urgency involved and the time required to get a warrant; (2) the officers’ reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to be *559 lieve the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects’ recent entry into the premises after hot pursuit.
Verez v. Commonwealth, 230 Va. 405, 410-11, 337 S.E.2d 749, 753 (1985); see also Cherry v. Commonwealth, 44 Va.App. 347, 360, 605 S.E.2d 297, 303 (2004). Moreover, in evaluating whether exigent circumstances justified a warrantless entry, we concern ourselves with “what an objectively reasonable officer on the scene could have believed.” United States v. Leveringston, 397 F.3d 1112, 1116 (8th Cir.), cert. denied, - U.S.-, 126 S.Ct. 159, 163 L.Ed.2d 145 (2005). “If such an officer would have had sufficient grounds to believe there was an exigency, then the Fourth Amendment does not require a warrant.” Id.
Here, there is ample evidence in the record to support the trial court’s finding that exigent circumstances justified the warrantless entry. Specifically, Officer Cox could reasonably have believed that multiple, underage individuals had gathered at a party in the country and consumed significant quantities of alcohol. Many of these individuals had driven to the residence and, if left to their own devices pending issuance of a search warrant, may have attempted to drive home, placing both themselves and the general public at risk of significant harm. See, e.g., Radloff v. City of Oelwein, 380 F.3d 344, 348 (8th Cir. 2004) (holding that “[ejxigent circumstances existed ... because of the threat to public safety if the juveniles left the house in cars while under the influence of alcohol,” further noting that “[i]t would have been unreasonable ... to require the officers to quarantine the juveniles’ cars during the period of time it would have taken to obtain a warrant”), cert. denied, 543 U.S. 1090, 125 S.Ct. 967,160 L.Ed.2d 900 (2005); see also Howes v. Hitchcock, 66 F.Supp.2d 203, 216 (D.Mass.1999) (holding that the police officers could have reasonably believed exigent circumstances existed where, inter alia, the officers were aware of the “risk to public safety posed by the possibility of the [intoxicated, underage] partygoers getting into their cars” and driving away).
*560 Also, upon sighting the police vehicle, several of the party-goers fled into the woods, not only creating a risk of harm to themselves but also a risk that evidence (specifically, their identities and blood alcohol levels) would be forever lost. Moreover, Officer Cox could reasonably have believed that, had he left the premises to secure a search warrant, there was a significant likelihood that the remaining partygoers — who were, at that point, aware of the police presence — would either flee or destroy physical evidence in an attempt to “cover up” the existence of the underage drinking party. See, e.g., Howes, 66 F.Supp.2d at 215 (holding that “the threat of destruction of evidence was sufficient to permit the warrantless entry” where “an objectively reasonable police officer ... could have concluded that ... many of the besotted teenagers would have fled” once they became aware of the police presence, and “[o]thers would have attempted to destroy or at least conceal evidence of the teenagers’ drinking had the officers waited patiently to obtain a warrant”); Jangala, 961 P.2d at 247-48 (noting that “evidence of the crime of furnishing alcohol to minors is easily destroyed,” and concluding that, because the officers “were aware that the evidence that they needed to seize was easily destroyed, combined with the fact that party-goers were aware of the police presence and had either run from the scene or otherwise attempted to avoid detection, there were exigent circumstances supporting the warrantless entry”).[15] Considering the totality of the circumstances, we hold that the exigencies of this situation were sufficient to authorize Officer Cox’s warrantless entry into Robinson’s backyard.
Moreover, we disagree with Robinson’s argument that this situation is one in which the investigating officer “manufactured the exigency.” It is well settled that, where law enforcement officers “create the exigency themselves, warrantless activity is per se unreasonable and we require suppression of any evidence obtained thereby.” United States *561 v. Webster, 750 F.2d 307, 328 (5th Cir.1984). However, as we have noted, law enforcement officers “ ‘are under no duty to call a halt to a criminal investigation the moment they have the minimum, evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.’ ” Cherry, 44 Va.App. at 360-61, 605 S.E.2d at 303 (quoting United States v. Tobin, 923 F.2d 1506, 1511 (11th Cir.1991) (internal quotations omitted)); see also Cardwell v. Lewis, 417 U.S. 583, 595, 94 S.Ct. 2464, 2472, 41 L.Ed.2d 325 (1974) (“[W]e know of no case or principle that suggests that the right to search on probable cause and ... under exigent circumstances [is] foreclosed if a warrant was not obtained at the first practicable moment.”). Thus, where the exigencies arise during the course of a continued investigation, those exigencies will not be deemed “manufactured” unless the officer had a meaningful opportunity to obtain a search warrant prior to the development of the exigencies upon which he relied. See, e.g., Webster, 750 F.2d at 327 (“Our first concern in analyzing a claim of manufactured exigency is whether agents could have obtained a search warrant prior to the development of the exigent circumstances upon which they relied.”); see also United State v. Cucci, 892 F.Supp. 775, 788 (W.D.Va.1995) (“[A] postponement in obtaining a warrant is appropriate when the purpose for the delay is to ‘ferret out any hitherto unknown individuals involved in the illicit undertakings, gather additional evidence substantiating the crimes believed to have been committed, or discover any other offenses in which the suspects are involved.’ ” (quoting United States v. Hultgren, 713 F.2d 79, 87 (5th Cir.1983))).
Despite Robinson’s argument to the contrary, then, Officer Cox was “under no duty” to leave the premises “the moment” he had the “minimum evidence to establish probable cause.” Cherry, 44 Va.App. at 360-61, 605 S.E.2d at 303. And, as discussed above, negligible time passed between the moment that Officer Cox “clearly” saw “two male juveniles standing on the other side of the tree holding beer bottles,” and the moment that these individuals became aware of his presence and fled. Because the development of probable cause and the *562 creation of the exigencies were virtually contemporaneous, Officer Cox had no meaningful opportunity in which to obtain a search warrant for the property before exigent circumstances necessitated his further intrusion onto the premises. Accordingly, we conclude that the “manufactured exigency” doctrine is inapplicable under the circumstances of this case. See Webster, 750 F.2d at 328 (declining to hold “that agents manufactured exigent circumstances by placing the [property] under surveillance” while attempting to gather further information).
For these reasons, we hold that the trial court did not err in concluding that the officer had both probable cause and exigent circumstances sufficient to justify his warrantless entry into Robinson’s backyard. Thus, we affirm the denial of his motion to suppress.
IV. CONCLUSION
We hold that, under the facts of this case, the Robinsons extended an implied invitation to members of the public to enter the driveway and approach the front door of the residence. Because the Robinsons impliedly consented to the initial, limited intrusion, Officer Cox’s presence on the driveway did not constitute an illegal search. Moreover, once he observed the underage individuals drinking beer and fleeing into the woods, Officer Cox’s further intrusion onto the property was justified because he possessed both probable cause and exigent circumstances. Because Officer Cox did not violate the Fourth Amendment, we hold that the trial court properly denied the Robinsons’ motions to suppress. Accordingly, we affirm their convictions for contributing to the delinquency of a minor.

Affirmed.

. Upon rehearing en banc, the Commonwealth has apparently abandoned its argument that the Robinsons lacked a reasonable expectation of privacy in their driveway because portions of the driveway were viewable from the state road. Cf. Robinson, 45 Va.App. at 608-09, 612 S.E.2d at 759.

. George Robinson’s new argument — that the officer lacked the exigent circumstances necessary to permit his entry into the backyard — was not argued before the three-judge panel either on brief or during oral arguments. Indeed, it is questionable whether Robinson properly assigned error to the trial court's clear ruling that the officer’s entry was constitutional because he possessed both probable cause and exigent *544 circumstances. Specifically, the third assignment of error in Robinson’s "Questions Presented," as enunciated in his petition for appeal, merely questions "Whether the 'plain view' doctrine authorized Sergeant Cox's entry into the Robinsons' backyard to seize evidence there.” Notably absent from this assignment of error is any mention of exigent circumstances or probable cause. However, because the assignment of error does question whether the officer’s "entry into the Robinsons’ backyard” was constitutionally permissible, we will assume for purposes of this opinion that Robinson's third "Question Presented” is sufficient to encompass the trial court’s ruling that exigent circumstances justified the officer's entry into the backyard.

. Of the three parties, then, Elisa Robinson is the only litigant who maintains a position consistent with that taken before the three-judge panel.

. For purposes of this subsection, Elisa Robinson will be referred to simply as "Robinson.”

. See generally 1 Wayne R. LaFave, Search and Seizure § 2.3(f), at 600-03 (4th ed.2004).

. We note that the issue of whether a property owner gave law enforcement officers free and voluntary consent to search the premises is a question of fact. See, e.g., Hargraves v. Commonwealth, 37 Va.App. 299, 307, 557 S.E.2d 737, 741 (2002) ("The presence of consent is, however, a factual question.”). Here, however, we are not questioning whether Robinson extended her consent to search the property, but rather, whether, under the totality of the circumstances, she had rescinded her implied consent to enter that property. Because the existence of this implied consent is presumed to exist absent evidence of an affirmative intent to exclude the public from the premises, see Somfleth, 8 P.3d at 227, the implied invitation to enter arises by operation of law. Accordingly, the issue of whether, under the totality of the circumstances, Robinson impliedly consented to have members of the public enter her property is a mixed question of law and fact that is properly reviewable on appeal. See id. at 225 (where the relevant facts were undisputed, classifying the issue of whether property owner extended his implied consent for members of the public to enter his backyard as "purely legal").

. Relevant factors that have been identified include “whether the officer (1) spied into the house; (2) acted secretly; (3) approached the house in daylight; (4) used the normal, most direct route to the house; (5) attempted to talk with the resident; (6) created an artificial vantage point; and (7) made the discovery accidentally.” State v. Ross, 91 Wash.App. 814, 959 P.2d 1188, 1190 (1998).

. This inference is supported by the fact that various members of the public had, in fact, approached the residence and "crashed” the party on the night in question.

. See also Morris, 961 P.2d at 657 n. 3 (noting that the "late hour” was “not such a factor in this case,” reasoning that “[i]f the investigation had been delayed until the next day, the [subject of the investigation] might have been gone”); Ross, 959 P.2d at 1191 (finding that the officers exceeded the scope of an implied invitation where "the officers arrived in an unmarked car, in plain clothes, after midnight, and made no attempt to contact [the defendant] or otherwise notify him of their presence”).

. During oral arguments, Elisa Robinson conceded that, if Officer Cox was legitimately present on the driveway, his subsequent entry into the backyard would be permissible because the officer had both probable cause and exigent circumstances.

. For purposes of this subsection, George Robinson will be referred to simply as "Robinson.”

. Robinson argues that, because Cox "had continued traveling the entire time that these observations were being made,” this Court must find, of necessity, that Officer Cox had "penetrated the privacy line” when the juveniles first noticed the police vehicle and then fled. The record is silent on the issue of Officer Cox's exact location when the juveniles dropped their beer bottles and ran into the woods. However, as discussed in Part 111(A)(2), supra, Officer Cox had not yet exceeded the scope of Robinson's implied consent when he parked his police vehicle in the parking area by the garage. Thus, even if Officer Cox did not observe the fleeing juveniles until after he had pulled into the parking area, he had not yet exceeded the scope of the implied invitation.

. Specifically, the trial court found that the Commonwealth had established probable cause because: (1) "there were three calls concerning the possibility of underage drinking,” (2) there were ten to twenty cars "parked in front of the home,” and (3) the officer observed two *558 individuals holding clear beer bottles who "dropped the bottles and ran after yelling 'cops.’ ” The trial court further held that the Commonwealth had established exigent circumstances "given the likelihood of evidence being destroyed and juveniles running away,” reasoning that “there was a high likelihood that the party would disperse quickly and evidence be destroyed once the juveniles or the Robinsons knew the police were on the properly,” further noting that "persons not detained by Corporal Cox would be likely to destroy evidence of the party immediately.”

. Indeed, as already noted, Robinson conceded the issue of probable cause during oral arguments, focusing instead on whether the officer had exigent circumstances sufficient to justify his warrantless entry.

. Indeed, the record reflects that Elisa Robinson at one point “told several juveniles to swallow vinegar in order to fool the [breathalyzer].”