COURT OF APPEALS OF VIRGINIA

Present: Judges Clements, Haley and Senior Judge Overton
Argued at Richmond, Virginia


DESMOND DARRYL HIGGS

MEMORANDUM OPINION[*] BY

v.        Record No. 1157-05-2        JUDGE JAMES W. HALEY, JR.
                                              MAY 16, 2006

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Daniel T. Balfour, Judge

William T. Linka (Richmond Criminal Law, on brief), for appellant.

Deana A. Malek, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


Desmond Darryl Higgs appeals from his conviction by bench trial of possession with intent to distribute marijuana, in violation of Code § 18.2-248.1. He asserts the trial court erred in denying his motion to suppress. We affirm.

I.

Initially, we note that in determining whether or not the trial court properly denied appellant's motion to suppress, "we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (citing Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923-24 (2000)).

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

FACTS

On July 28, 2004, Henrico County Police Officer Burroughs and two other officers responded to a call for service at the corner of Howard and Skelton Streets in the Glenwood Farms apartment complex in Henrico County. The caller stated that five black males, one of whom wore black jeans with plaid boxer shorts showing above the jeans, were selling narcotics on the street corner. Officer Burroughs testified that upon his arrival, the males split into two separate groups. One of these groups consisted of two men, one of whom fit the caller's description, who were "swiftly" walking away from the officers.

Burroughs and the two other officers asked the two men to stop and walk back toward them. Without a request to do so, the two men produced identification and presented it to one of the officers. Burroughs testified that he "thought [that] to be odd, since that had never happened to me before in my experience." Burroughs described the men as nervous and testified that they began backing away from the officers after handing over their IDs.

The officers next asked the men whether or not they had any drugs or weapons on their person. The men responded no. Burroughs testified that the officers next asked appellant to consent to a pat down for drugs and weapons. He explained the rationale for this request as follows:

> The area is a part of Glenwood Farms Apartments. It's a very high crime area. We . . . frequently get calls there for narcotics violations, fights in progress, and firearms violations; where citizens will call in saying that they heard pop shots in the area. You know, I've worked myself a couple of shootings there on that same street.

Burroughs also testified that officers "had dealt with [one of the men] in the past in the same area," describing him as "a well known individual to us." He also explained that "in [his] experience and training . . . guns are also associated with drugs."

After appellant denied the officers' request, Buroughs informed him that he was going to "pat down the outside of his clothes for weapons." Appellant responded, "No, you can't touch me . . . . No, I gave you my ID. You can't touch me." Burroughs testified that appellant began walking away and kept repeating the words "No, don't touch me. You can't touch me."

Burroughs approached appellant, and when he reached to within an arm's length from him, appellant began running away. Burroughs pursued appellant in "a brief foot chase." He finally tackled appellant in the backyard of a nearby house. Burroughs testified that when he tackled appellant, appellant's hands were underneath a car in the backyard of the house. He then pulled appellant's hands back "towards his body." Burroughs testified, "Underneath where his hands was, was a large baggie containing what I believed to be marijuana."

Appellant testified, "[the officer] told me he had a probable call on drugs and guns, and he asked me could he pat me down. I told him no and passed him my ID . . . [and] stood right there." He admitted that when Burroughs approached him, he "started backing up from him."

The Commonwealth introduced into evidence a lab report, which confirmed the items seized from appellant as seventeen small bags of marijuana. Appellant sought to suppress this evidence. The trial court denied the motion, holding as follows:

> I think the thing that cinches it . . . is the totality . . . if you take
> down the high crime, which this addresses; taking down the fact
> that he's nervous, which I don't think is particularly strong,
> because I think all of us would be nervous; but the fact they
> scattered, when approached by police; they held out the licenses,
> which nobody objected was unusual to walk up and hold out your
> license right away; and that they had – one of five had been
> somewhat identified by the officers, before they had dealt with for
> drugs. I think all those things together are enough to create more
> than a hunch.

This appeal followed.

III.

ANALYSIS

"[I]n reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the appellant] to show that the ruling . . . constituted reversible error.'" Robinson v. Commonwealth, 47 Va. App. 533, 544, 625 S.E.2d 651, 656 (2006) (*en banc*) (quoting McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (additional citation omitted)). "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

As this Court has recognized, "Fourth Amendment jurisprudence recognizes three categories of police-citizen confrontations: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions, based upon specific, articulable facts, commonly referred to as Terry stops, and (3) highly intrusive arrests and searches founded on probable cause." Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995). "An encounter between a law enforcement officer and a citizen in which the officer merely identifies himself and states that he is conducting a narcotics investigation, without more, is not a seizure within the meaning of the Fourth Amendment but is, instead, a consensual encounter." McGee, 25 Va. App. at 199, 487 S.E.2d at 262. Likewise, "a police request made in a public place for a person to produce some identification, by itself, generally does not constitute a Fourth Amendment seizure." McCain v. Commonwealth, 261 Va. 483, 491, 545 S.E.2d 541, 546 (2001) (citing Immigration and Naturalization Service v. Delgado, 466 U.S. 210, 216 (1984)).

We note, however, that a consensual encounter may evolve into a Terry stop. "In order to justify the brief seizure of a person by such an investigatory stop, the police officer must 'have

- 4 -

a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.'" Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464-65 (2003) (quoting Brown v. Texas, 443 U.S. 47, 51 (1979)). "To determine whether a police officer had a particularized and objective basis for suspecting that the person stopped may be involved in criminal activity, a court must consider the totality of the circumstances." Id. (citation omitted).

Here, the encounter between appellant and police began as a consensual encounter. The officers approached the appellant and his companion and asked them to come back and speak with them. The two men, without any request from the officers, produced identification and handed the same to the officers. After appellant denied the officers' request for a pat-down search, Officer Burroughs moved toward appellant in order to pat down his outer clothing for weapons. Appellant repeatedly stated "No, don't touch me. You can't touch me" and took flight.

In Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000), the United States Supreme Court held the following:

> Headlong flight -- wherever it occurs -- is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. . . . Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

See also Whitfield, 265 Va. at 362, 576 S.E.2d at 465 (citing Wardlow); Washington v. Commonwealth, 29 Va. App. 5, 13, 509 S.E.2d 512, 516 (1999) (*en banc*) ("A single instance of attempted flight or furtive behavior by a suspect is suggestive of guilt . . . .").

Moreover, in Wardlow, the Supreme Court recognized that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." 528 U.S. at 124 (citation omitted). Also, "officers are not required to ignore the relevant characteristics of a location in determining

- 5 -

whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a <u>Terry</u> analysis." <u>Id.</u> (citation omitted).

Therefore, we hold that appellant's attempt to flee the scene gave Officer Burroughs reasonable, articulable facts upon which "to stop [him] and investigate further." Moreover, the following also contribute to the totality of the circumstances in making such a determination: appellant's nervous behavior and the fact that all of the men scattered when the officers arrived; the officer's first-hand knowledge of the apartment complex as a high crime area; the officer's prior dealing with one of the suspects "for drugs"; and finally, the unusual action of appellant producing identification without a request for the same.

The trial court did not err in denying appellant's motion to suppress, and, accordingly, appellant's conviction is affirmed.

<u>Affirmed.</u>