UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, AtLee and Malveaux

DAVID OWEN PRESTON

v.       Record No. 1876-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
OCTOBER 31, 2023

FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
William R. Savage, III, Judge Designate

(Jennifer Walsh; Walsh Law Offices, on brief), for appellant.
Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Angelique Rogers, Assistant
Attorney General, on brief), for appellee. Appellee submitting on
brief.

Following a bench trial, David Owen Preston ("appellant") was convicted of driving while

intoxicated ("DWI"), in violation of Code § 18.2-266. He argues the trial court erred in denying his

motion to suppress, because police violated his Fourth Amendment rights when they entered his

property concerning "a landlord tenant civil matter." Finding no error, we affirm the trial court.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In

doing so, we discard any of appellant's conflicting evidence, and regard as true all credible evidence

favorable to the Commonwealth and all inferences that may reasonably be drawn from that

evidence. *Gerald*, 295 Va. at 473.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

On the afternoon of February 15, 2021, Deputy Bruce Turner of the Southampton County Sheriff's Office drove to a rural property in response to a tenant complaint that the landlord had cut off the water. The property was owned by appellant's mother, Teresa Preston, and appellant lived there with her. The Prestons' residence was down a "dirt[,] rocky" driveway that extended approximately one-quarter to one-half mile from the road. At the end of the driveway was a "parking area" containing several vehicles. The Prestons' house sat to the left of this area, a large pile of woody debris sat to the right, and an outbuilding sat beyond the parking area across from the driveway. Beyond the debris sat the tenant's camper.

When Turner arrived on the property, he stopped his vehicle in the parking area and spoke with the tenants near the debris pile.[1] They complained that the water connection to their camper had been turned off by one of the Prestons.[2] They also reported that appellant was intoxicated and passed out in a car in the parking area. The tenants indicated that appellant had been "doing doughnuts" around the debris pile and had "almost hit them."

Turner walked about 20 yards to the car identified by the tenants, which Turner described as being "in plain view where I was talking to them." The windows of the car were up and the engine was running. Appellant, who was in the driver's seat, appeared to be "just waking up" when Turner knocked on the window and told him to roll his window down. When appellant put the window down, Turner noted that he was "very intoxicated" and smelled of alcohol. His eyes were glassy and watery and his speech was slurred. Appellant was holding an open alcoholic beverage can, and the passenger-side floorboard contained several empty alcoholic beverage cans. Turner asked

---

[1] At the hearing on the motion to suppress, the Commonwealth introduced Turner's body camera video recording showing his interactions first with the tenants, and then with appellant.

[2] Teresa Preston testified that the tenants obtained their water from "outside faucets" by "hooking hoses . . . hose to hose to hose to get it down" to their camper. The tenants later showed Turner the faucet from which they had drawn water; it was located between the house and the parking area.

appellant how much he had had to drink, and appellant responded, "[n]ot enough." Turner continued to speak with appellant about how much appellant had had to drink and the dispute with the tenants. While they talked, appellant continued to drink his beverage and, at one point, offered Turner a drink.

After another officer arrived on the scene, Turner asked appellant to get out of the car. Appellant refused to perform field sobriety tests, and the deputies placed him under arrest for DWI. Although he did not deny that he was intoxicated, appellant questioned the deputies how he could be charged with DWI while in a car in his driveway.

Deputies obtained a search warrant for a sample of appellant's blood. The Virginia Department of Forensic Science later certified that the blood alcohol content of appellant's sample was approximately 0.266% by weight by volume.

Appellant moved to suppress the evidence, arguing that deputies had exceeded their authority and violated his rights under the Fourth Amendment when they approached him in a car in his yard while responding to an unrelated civil matter. The trial court denied the motion, finding that Turner "had justification for being there, to answer a call. And the fact that it was a civil call doesn't mean the officer has to be blind to crimes that are being committed where he can see what's going on. . . . [Turner had] a duty to investigate a potential drunk driving [sic], which he did."

The trial court convicted appellant of DWI. This appeal followed.

## II. ANALYSIS

Appellant argues the trial court erred in denying his motion to suppress. Specifically, he contends that police "exceeded their authority" when they entered his curtilage in "respon[se] to a landlord tenant civil matter," and thus his "seizure . . . violated the Fourth Amendment[.]"

"On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth." *Jones v. Commonwealth*, 71 Va. App. 375, 380 (2019)

- 3 -

(quoting *Carlson v. Commonwealth*, 69 Va. App. 749, 757 (2019)).  "[W]hen a defendant challenges the denial of a motion to suppress, he has the burden to show that the trial court's ruling constituted reversible error." *Adams v. Commonwealth*, 48 Va. App. 737, 745 (2006). "Since the constitutionality of a . . . seizure under the Fourth Amendment involves questions of law and fact, we give deference to the factual findings of the trial court but independently decide whether, under the applicable law," the manner in which the seizure occurred "satisfies constitutional requirements." *Jackson v. Commonwealth*, 267 Va. 666, 672 (2004).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It long has been recognized that, for Fourth Amendment purposes, the home includes more than the interior of a residence: the amendment's protections also extend to 'the land immediately surrounding and associated with the home,' an area referred to as 'the curtilage.'" *Saal v. Commonwealth*, 72 Va. App. 413, 421-22 (2020) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)).  "Because the curtilage is 'considered part of home itself for Fourth Amendment purposes[,]' the amendment's protection against unreasonable searches [and seizures] applies to such areas." *Id.* at 422 (first alteration in original) (quoting *Oliver*, 466 U.S. at 180).  "When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred.  Such conduct thus is presumptively unreasonable [for Fourth Amendment purposes] absent a warrant." *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018).

To determine whether an area is part of the curtilage of the home, "the centrally relevant consideration [is] whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *United States v. Dunn*, 480 U.S. 294, 301 (1987).  In *Dunn*, the Supreme Court identified four factors as

"useful analytical tools only to the degree that, in any given case, they bear upon th[is] centrally relevant consideration." *Id.* These four factors are: 1) the "proximity of the area claimed to be curtilage to the home"; 2) "whether the area is included within an enclosure surrounding the home"; 3) the "nature of the uses to which the area is put"; and 4) "the steps taken by the resident to protect the area from observation by people passing by." *Id.*

We assume without deciding that appellant's car was within the curtilage of his home when Deputy Turner approached it. However, "[k]ey to th[e]" presumption that a police officer's entry upon a citizen's curtilage is "presumptively unreasonable absent a warrant," *Collins*, 138 S. Ct. at 1670, "is that law enforcement officers may not enter the curtilage *to gather evidence*," *Ingram v. Commonwealth*, 74 Va. App. 59, 69 (2021). "As such, the Supreme Court has noted that there is a license 'implied from the habits of the country,' for the general public to approach a home in the hopes of speaking with a resident." *Id.* (quoting *Florida v. Jardines*, 569 U.S. 1, 8 (2013)). "Absent affirmative steps to rescind the invitation by the homeowner, the license 'typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave.'" *Id.* at 69-70 (quoting *Jardines*, 569 U.S. at 8). "This license extends to law enforcement because '[w]hen law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do.'" *Id.* at 70 (alteration in original) (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011)).

"Finally, so long as officers are within the geographic scope of the implied license, they 'are free to keep their eyes open.'" *Id.* (quoting *Robinson v. Commonwealth*, 47 Va. App. 533, 550 (2006) (en banc), *aff'd*, 273 Va. 26 (2007)). However, "whether an officer's actions fall within the implied license 'depends upon the purpose for which [he or she] entered.'" *Id.* (alteration in original) (quoting *Jardines*, 569 U.S. at 10).

Here, the evidence demonstrated that Deputy Turner went to appellant's home in response to a tenant's complaint that they had been denied access to water—a civil matter—and not to investigate and gather evidence of a crime. Like any other visitor, Turner followed the driveway from the road to the parking area near the home. Once Turner was in the parking area, the tenants advised him that appellant was intoxicated, had been driving erratically and nearly struck them with his car, and was currently in a car in the parking area. That car was running and in plain view, approximately 20 yards away from Turner. Under these circumstances, and within the implied license to be in his position, Turner was "free to keep [his] eyes open" to make observations and then to investigate a reasonable articulable suspicion that criminal activity was afoot.[3] *Id.* (quoting *Robinson*, 47 Va. App. at 550).

Turner then encountered appellant, who was obviously intoxicated and who continued to consume alcohol in a running car. The officer thus possessed probable cause to arrest appellant for DWI. *See* Code § 18.2-266; *see also Gray v. Commonwealth*, 23 Va. App. 351, 353 (1996) (rejecting contention that Code § 18.2-266 did not prohibit driving while intoxicated on privately owned property). For these reasons, deputies did not violate appellant's Fourth Amendment rights and the trial court did not err in denying appellant's motion to suppress.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*

---

[3] On brief, appellant does not challenge that under the facts and circumstances of this case, Turner possessed a reasonable articulable suspicion of criminal activity sufficient for him to investigate possible DWI.