Present:  All the Justices

ELISA K. ROBINSON

v.  Record No. 060417

COMMONWEALTH OF VIRGINIA

OPINION BY JUSTICE ELIZABETH B. LACY
January 12, 2007

GEORGE F. ROBINSON

v.  Record No. 060426

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In these consolidated appeals, we consider whether a warrantless search and seizure within the curtilage of a private residence violated the Fourth Amendment either because the investigating officer (1) did not act within the scope of the implied consent for uninvited individuals, including law enforcement, to enter the curtilage of the residence in order to contact the occupants, or (2) did not have probable cause and exigent circumstances under the facts presented.

FACTS

Our recitation of the facts is based both on a Joint Stipulation (Stipulation) executed by the attorney for the Commonwealth, Elisa K. Robinson (Elisa) and George F. Robinson (George), and on the testimony of Corporal Scott Cox of the Albemarle County Police Department (Officer Cox).  On appellate review, we are bound by the familiar principle that

"we must consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party below." Rose v. Commonwealth, 270 Va. 3, 6, 613 S.E.2d 454, 455 (2005).

According to the Stipulation, on August 16, 2002, Elisa and George hosted a party for Elisa's son Ryan to celebrate his sixteenth birthday. Elisa purchased food and beverages for the party in the amount of $1,013.97, including $350.48 for alcoholic beverages. She also purchased "five [large] trashcans for the purpose of icing down" the beverages.

Prior to the party, George and Elisa spoke with the parents of some of the invited juveniles. Elisa told these parents that she intended to collect the juveniles' car keys and that she would "move [her] sports utility vehicle across the driveway once all the guests had arrived to prevent the juveniles from leaving" the party. Elisa did not tell any of the parents she intended to serve alcoholic beverages. Further, during the party, one juvenile overheard George stating to someone on the telephone "that there was no alcohol at the party."

Approximately thirty juveniles attended the party. The trash cans containing the alcoholic beverages were placed in the backyard behind the fence "so that they would not be visible to any parent who brought their children to the

party."  Elisa and George neither encouraged the juveniles to consume alcoholic beverages nor discouraged them from doing so.  George, however, instructed several of the juveniles not to drink near the pool "because he did not want [any] broken glass in [the] pool."

Officer Cox testified that on the night of the party, the Albemarle County Police Department received three telephone calls reporting the possibility of juveniles consuming alcoholic beverages at a party at the Robinsons' home.  In response to these calls, Officer Cox drove to the Robinson home at around 11:00 p.m. in a marked police vehicle.

As Officer Cox approached the property, he observed approximately 10 to 20 vehicles parked along the adjacent public road.  He also saw "two or three" vehicles parked on the left side of the driveway.  Based on these observations, Officer Cox contacted other Albemarle County police officers waiting in the vicinity and instructed them to "start heading this way" because it "appears that there's a party."

When Officer Cox turned his vehicle into the driveway, he could see the house, the front door and porch, and the front yard, but he could not see the end of the driveway, the garage area, or the backyard.  As Cox proceeded up the driveway, he observed several additional vehicles parked near the right side of the driveway.  He was also able to see, in front of

3

the house, a "small circular portion of the driveway" that encircled a stand of trees. Instead of parking in the circular portion of the driveway, Officer Cox drove his vehicle along the main portion of the driveway, which continued past the trees and led to the garage area on the right side of the house. A path leading to the front door intersected the driveway beyond the stand of trees but a few feet before the garage area. A large bush was located adjacent to the driveway immediately in front of this path.

Before Officer Cox reached the point where the path intersected the driveway, he saw two individuals holding clear beer bottles. Both were standing approximately seven to ten yards "into the back yard" and appeared to be younger than 21 years of age. When the individuals saw Officer Cox's vehicle they yelled "cops," dropped their beer bottles, and ran along a fence line toward the woods behind the house.

Officer Cox then pulled his vehicle into the garage area and parked on the concrete pad. From there, Officer Cox saw a patio table covered with beer bottles as well as "[b]eer bottles spread throughout the [back]yard." Officer Cox stepped out of his vehicle, "yelled for [people] to stop [running]," and "got on the radio, and . . . told everybody that was arriving on the scene that the kids were running

4

east, past the house, into the woods."  He then went into the backyard to locate "the juvenile hosting the party."

Officer Cox testified that he wanted to locate the host to "find out what was going on [and] find out who the people were that were running away."  He was "worried for their safety" and "wanted to find out who they were, so [the police] could contact parents."  In the backyard, Officer Cox spoke with one of the juveniles and, "based on that conversation," approached the back of the house.  Through the sliding glass door at the back of the house, Officer Cox saw George and Elisa sitting at a kitchen table.

According to the Stipulation, when the other police officers arrived at the Robinsons' home, they found four trash cans in the backyard filled with alcoholic beverages, empty alcoholic beverage bottles in the yard, and half-empty bottles on the table and on the rear deck.  Despite the Robinsons' professed intentions to collect the car keys of all the party guests and have them remain overnight, the Robinsons had only collected five or six sets of keys.  They also had not blocked the driveway in order to prevent guests from leaving.  While the police were conducting their investigation on the premises, Elisa told several of the juveniles to "swallow vinegar in order to fool the Alcosensor."  Elisa also instructed one girl to "tell her parents that a boy had

5

spilled alcohol on her" to explain why she "tested positive" on the Alcosensor. Nine of the juveniles at the Robinsons' residence had "measurable levels" of alcohol in their systems when the police arrived.

The Robinsons were arrested and each was charged with 16 counts of contributing to the delinquency of a minor under Code § 18.2-371. Both Elisa and George filed motions to suppress the evidence obtained from Officer Cox's entry onto their property, arguing that Officer Cox's conduct violated the Fourth Amendment because he was not in a place that he was legally entitled to be when he witnessed the illegal activity.

In a letter opinion, the trial court denied the Robinsons' motions to suppress, finding as matters of fact that Officer Cox "planned to enter the property to investigate the allegations of underage consumption of alcohol," and that he saw the juveniles with beer "[b]efore he reached the point where the front walkway to the front door intersected with the driveway." After finding that the driveway was not part of the curtilage of the Robinsons' home, and therefore did not implicate the Fourth Amendment, the trial court determined that Officer Cox's presence on the driveway was lawful because he had the right to approach a home and knock on the front door to speak to an occupant. The trial court also found that Officer Cox's warrantless entry into the backyard was

6

permissible because he "had the requisite probable cause, which requires that an officer's knowledge of the facts and circumstances are sufficient to justify a reasonable person to think an offense is being committed."  The trial court denied the Robinsons' joint motion for reconsideration.

The trial court later granted the Commonwealth's motion to terminate by nolle prosequi seven of the charges against each of the Robinsons.  Although the Robinsons stipulated that the evidence was sufficient to sustain convictions on the nine remaining charges against each of them, they pleaded not guilty to the charges, thereby preserving their position that the evidence was illegally obtained and should have been suppressed.  The trial court found both the Robinsons guilty and sentenced each of them to consecutive terms of six months' imprisonment, with three months suspended, on each charge.

The Robinsons appealed their convictions to the Court of Appeals, which consolidated the appeals and affirmed the convictions in a decision by a three-judge panel.  Robinson v. Commonwealth, 45 Va. App. 592, 622, 612 S.E.2d 751, 765 (2005).  The Robinsons later sought and were granted a rehearing en banc.  Robinson v. Commonwealth, 46 Va. App. 23, 24, 614 S.E.2d 667, 667 (2005).

Sitting en banc, the Court of Appeals held that the Robinsons had impliedly consented to have the public,

including police officers, "enter the driveway and front sidewalk" of their property, and that Officer Cox did not exceed the scope of this consent either at the point he observed the juveniles holding beer bottles or when he drove his car onto the cement pad by the garage.[1]  Robinson v. Commonwealth, 47 Va. App. 533, 549-53, 557, 625 S.E.2d 651, 658-59 (2006).  The Court of Appeals further held that Officer Cox's subjective intent was "irrelevant under the circumstances of this case."  Id. at 555, 625 S.E.2d at 661.

The Court of Appeals rejected an argument made by George that when Officer Cox saw the juveniles with beer bottles, he should have "left the property or otherwise secured the premises and then obtained a search warrant."  Id. at 543, 625 S.E.2d at 656.  The Court of Appeals concluded that there were exigent circumstances, including possible destruction of evidence and fleeing suspects, and that Officer Cox did not manufacture these circumstances, because "the development of probable cause and the creation of the exigencies were virtually contemporaneous."  Id. at 561-62, 625 S.E.2d at 665. The Court of Appeals affirmed the Robinsons' convictions.  Id. at 562, 625 S.E.2d at 665.

---

[1] Upon rehearing en banc, the Commonwealth conceded that the driveway was within the curtilage of the Robinsons' home and this question was, therefore, not before the entire Court of Appeals.  Robinson, 47 Va. App. at 542, 625 S.E.2d at 655.

8

The Robinsons filed separate petitions for appeal.  We awarded both appeals and consolidated the cases for our consideration.

DISCUSSION

We begin by reviewing principles established by the United States Supreme Court regarding the Fourth Amendment protection afforded residents and occupants of a dwelling against unreasonable searches and seizures.  The "Fourth Amendment protects the curtilage of a house and . . . the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself."  United States v. Dunn, 480 U.S. 294, 300 (1987).  When government agents conduct a search or seizure within protected areas of a dwelling without a warrant such actions are presumptively unreasonable, Payton v. New York, 445 U.S. 573, 586-87 (1980), and unlawful unless they are supported by both probable cause and exigent circumstances.  Kirk v. Louisiana, 536 U.S. 635, 638 (2002).

The Supreme Court has not addressed what expectation of privacy a resident of a dwelling has in those areas of the curtilage, such as driveways and sidewalks, that are generally used by the public to contact the resident.  However, a number of federal and state courts have held that a resident of a

9

dwelling impliedly consents to a police officer entering the curtilage to contact the dwelling's residents.  This implied consent has the effect of deeming such an entry into the curtilage a reasonable intrusion into an area otherwise protected by an expectation of privacy under the Fourth Amendment.  See, e.g., United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006); United States v. Taylor, 90 F.3d 903, 909 (4th Cir. 1996); Davis v. United States, 327 F.2d 301, 303 (9th Cir. 1964); State v. Christensen, 953 P.2d 583, 587 (Idaho 1998); City of Eugene v. Silva, 108 P.3d 23, 27 (Or. Ct. App. 2005).  Implied consent can be negated by obvious indicia of restricted access, such as posted "no trespassing" signs, gates, or other means that deny access to uninvited persons.  See, e.g., Christensen, 953 P.2d at 587-88.

We now turn to the specific issues raised by the Robinsons in their appeals.

### IMPLIED CONSENT

The Robinsons argue that the Court of Appeals erred in holding that Officer Cox did not exceed the scope of implied consent to enter the curtilage of their home.  The Robinsons do not challenge the doctrine of implied consent but, instead, challenge the standards for its application articulated by the Court of Appeals.

10

Elisa maintains that a police officer's subjective intent at the moment of entry onto the curtilage of a dwelling is relevant in determining whether the officer acted within the scope of the officer's implied consent. Elisa contends that "[o]ne impliedly consents only to the approach to the front door to knock and make inquiry." Thus, she asserts, an officer has implied consent "to go to the entrance of the home only by the most direct route and only if he is acting in good faith to contact the owners of the property for a purpose such as asking questions of the occupants."

George concedes that Officer Cox had implied consent to enter the driveway. George argues, however, that once Officer Cox was on the property and "actively searching for evidence of a crime within a constitutionally protected area," Cox's "legitimate reason" for entering the property, to contact the Robinsons, was "revoked," thereby rendering Cox's presence unlawful. George further argues that implied consent could not extend beyond the point where the path to the front door intersected the driveway absent the development of "a new legitimate reason."

Both Elisa and George urge us to adopt a bright line rule that the scope of implied consent is limited to the most direct path to the front door of a dwelling to "knock and talk" with one of its residents. Elisa asserts that Officer

11

Cox's failure to comply with this rule rendered his initial entry onto the curtilage unconstitutional.  George argues that Officer Cox's actions became illegal when, after lawfully entering the property, he failed to proceed directly to the front door.

In resolving these issues, we first consider whether an officer's subjective intent is relevant to a determination of whether the officer's entry onto the curtilage of a dwelling was constitutional under the implied consent doctrine. Neither the United States Supreme Court nor this Court has addressed this question.  We observe, however, that established jurisprudence concerning the constitutionality of police searches provides little, if any, support for application of a subjective standard in determining the constitutionality of an entry conducted pursuant to the doctrine of implied consent.

The United States Supreme Court has repeatedly rejected any consideration of the subjective motivation of a law enforcement officer in determining whether police searches were constitutionally infirm and, instead, has relied on an objective view of the facts and circumstances of each particular case.  See, e.g., Arkansas v. Sullivan, 532 U.S. 769, 771-72 (2001) (reversing granting of motion to suppress based on officer's alleged "improper subjective motivation");

12

United States v. Villamonte-Marquez, 462 U.S. 579, 584 n.3

(1983) (rejecting argument that search was unlawful because

officers' intent in boarding vessel was other than that

contemplated by statute which authorized officers to board to

examine vessel's documentation); Scott v. United States, 436

U.S. 128, 138 (1978) ("[T]he fact that the officer does not

have the state of mind which is hypothecated by the reasons

which provide the legal justification for the officer's action

does not invalidate the action taken as long as the

circumstances, viewed objectively, justify that action").[2]

The Supreme Court recently reiterated this position in a

case decided four months after the Court of Appeals issued its

opinion in the present case. In Brigham City v. Stuart, ___

U.S. ___, 126 S.Ct. 1943 (2006), the Court was asked to

consider the constitutionality of a search conducted after

police officers went to a private residence in response to a

report of a loud party. When the officers arrived at the

residence, they heard shouting coming from inside the house,

---

[2] The exception to this rule involves searches "undertaken
pursuant to a general scheme without individualized
suspicion," in which the Court has examined the "programmatic
purposes" of the action. See, e.g., City of Indianapolis v.
Edmond, 531 U.S. 32, 45-46 (2000). In the present case, Elisa
argues that the police action at her home constituted a
"programmatic" search, thereby making Officer Cox's subjective
intent relevant. Because Elisa did not raise this argument to
trial court or the Court of Appeals, we do not address it
here. Rule 5:25.

proceeded down the driveway to investigate, and entered the backyard after observing juveniles drinking alcoholic beverages there.  Once in the backyard, the officers observed, through a screen door and a window, an altercation occurring inside the house.  Acting without a warrant, the officers entered the residence in an attempt to halt the altercation. The officers later arrested the individuals inside the house for various offenses, including disorderly conduct and contributing to the delinquency of a minor.  ___ U.S. at ___, 126 S.Ct. at 1946.

The defendants moved to suppress all evidence obtained after the officers entered the home, arguing that the officers' warrantless entry violated the Fourth Amendment. The defendants asserted that the "emergency aid" exception to the warrant requirement was inapplicable because the officers did not intend to assist injured individuals in the home, and "were more interested in making arrests than quelling violence."  ___ U.S. at ___, 126 S.Ct. at 1948.

The Supreme Court unanimously rejected this argument, stating that, "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.' . . .  The officer's subjective motivation is irrelevant."  ___ U.S. at ___, 126 S.Ct. at 1948

14

(quoting Scott, 436 U.S. at 138).  Focusing solely on the

objective facts presented, the Court concluded:

> It therefore does not matter here – even if their
> subjective motives could be so neatly unraveled –
> whether the officers entered the kitchen to arrest
> respondents and gather evidence against them or to
> assist the injured and prevent further violence.

Stuart, ___ U.S. at ___, 126 S.Ct. at 1948.

Although the holding in Stuart was based on the

"emergency aid" exception to the warrant requirement, the

Court's rejection of a subjective intent analysis did not rely

exclusively on cases applying that particular exception.  The

Court also relied on cases involving an officer's physical

examination of a bus passenger's "carry-on luggage," Bond v.

United States, 529 U.S. 334, 338 n.2 (2000), a traffic "stop"

and resulting seizure of drugs, Whren v. United States, 517

U.S. 806, 813 (1996), claims of excessive force, Graham v.

Connor, 490 U.S. 386, 397 (1989), and government wiretapping

and telephone surveillance, Scott, 436 U.S. at 138.  See

Stuart, ___ U.S. ___, 126 S.Ct. at 1948.  And, as indicated

above, in several other cases the Court likewise has rejected

consideration of an officer's subjective intent.  Thus, we do

not read the holding in Stuart as limited to application of

the emergency aid exception.

We conclude that the holdings in the above cases, when

considered collectively, counsel against consideration of a

15

police officer's subjective intent in determining the legality of the officer's actions.  Because a contrary interpretation of these holdings would directly conflict with the Supreme Court's recent guidance in Stuart, we hold that the Court of Appeals did not err in concluding that Officer Cox's subjective intent was irrelevant to a determination of whether he exceeded the scope of the implied consent in conducting the challenged search and seizures.

Our conclusion is not changed by other cases cited by the Robinsons involving the implied consent doctrine:  Rogers v. Pendleton, 249 F.3d 279 (4th Cir. 2001); Alvarez v. Montgomery Cty., 147 F.3d 354 (4th Cir. 1998); United States v. Taylor, 90 F.3d 903 (4th Cir. 1996); United States v. Bradshaw, 490 F.2d 1097 (4th Cir. 1974); and Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003).  Although these cases state that an officer does not violate the Fourth Amendment by entering onto private property for the limited purpose of contacting, interviewing, or speaking with an occupant of the property, the cases do not address the converse proposition advanced by the Robinsons:  that if an officer subjectively intends to do something other than make these kinds of contacts, the officer's entry onto private property constitutes a violation of the Fourth Amendment.  The subjective intent of the officers when entering the premises was not at issue in any of

16

these cases.  Moreover, the conclusion urged by the Robinsons would conflict with the several decisions of the Supreme Court that we have already noted.

We also observe that in the present case, the trial court concluded that the officer's purpose in entering the Robinsons' property was to investigate a report of juveniles consuming alcoholic beverages.  Because the Robinsons did not assign error to this factual finding, we accept the trial court's conclusion that Officer Cox's purpose was investigatory in nature.  An investigation may include, as George's counsel agreed at the suppression hearing, contacting the occupants of a residence and asking them questions.  In this case, before Officer Cox could contact the Robinsons, intervening circumstances caused him to pursue a different course of action.

Accordingly, we reject the Robinsons' suggestion that we adopt a bright line rule holding that the implied consent given by a resident of a dwelling is limited in all cases to entry onto the premises to "knock and talk" to the resident, and that any deviation from this purpose precludes application of the implied consent doctrine.  As the United States Court of Appeals for the Fourth Circuit stated in <u>Alverez</u> when rejecting the same bright line rule advocated by the defendants in that case:

17

> The textual "touchstone of the Fourth Amendment is
> reasonableness."  When applying this basic
> principle, the Supreme Court has "consistently
> eschewed bright-line rules, instead emphasizing the
> fact-specific nature of the reasonableness
> inquiry."

147 F.3d at 358 (citations omitted).

### PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES

We next address an argument made by both Elisa and George that when Officer Cox reached the path leading from the driveway to the front door, he lacked probable cause and there were no exigent circumstances to justify a search of the backyard or the seizure of any evidence or person in that location without a warrant.  According to the Robinsons, evidence thus obtained by Officer Cox after entering the backyard or garage area was the result of an unconstitutional search and should have been suppressed.[3]

On review, we will not disturb the factual findings of the trial court unless plainly wrong or unsupported by the evidence.  Mercer v. Commonwealth, 259 Va. 235, 243, 523

---

[3] Elisa assigns error to the Court of Appeals' finding that the plain view doctrine justified Cox's actions.  George assigns error to the trial court's holding on the "'plain view doctrine,' as interpreted by the trial court."  Our review of the trial court's letter opinion, however, indicates that although the trial court characterized its analysis as a "plain view" inquiry, the court focused on the existence of probable cause and exigent circumstances.  Accordingly, while we address the existence of probable cause and exigent circumstances, we do not consider application of the plain view doctrine.

S.E.2d 213, 217 (2000).  The issue of whether an officer acted with probable cause and under exigent circumstances, however, is a mixed question of fact and law that we review de novo. See Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005).

We conclude that the record supports the trial court's factual finding that Officer Cox had not passed the path leading to the front door when he saw juveniles in the backyard holding beer bottles.  We also hold that Officer Cox acted with probable cause and under exigent circumstances when he proceeded past the path and into the garage area and backyard without a warrant.

### 1.  Probable Cause

At the hearing on the Robinsons' motions to suppress, the Commonwealth presented as exhibits photographs showing the Robinsons' property from various vantage points along the driveway.  On direct examination, Officer Cox identified on one of the exhibits a bush located immediately before the path leading to the front door.  He testified that when he was "about at th[at] point" and still in his vehicle, he saw what appeared to be juveniles holding beer bottles in the vicinity of a pine tree in the backyard.  On cross examination, Officer Cox testified that although he was able to see people standing by the pine tree before he reached the path to the front door,

he was unable to determine that they were juveniles holding beer bottles until he actually reached the path. In response to questions posed by the trial court, Officer Cox testified that he was "at the bush" when he saw the two juveniles holding beer bottles.

Because there is evidence in the record to support the trial court's finding that Officer Cox had not passed the path when he saw the juveniles holding beer bottles, we cannot say the trial court's factual conclusion was plainly wrong. Taking the finding as true, we therefore conclude that Officer Cox had probable cause to enter the backyard, after having observed a crime in progress, before he reached the path to the front door. See Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981)("[P]robable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed.").

In order to proceed further without obtaining a warrant, however, exigent circumstances were also required. Horton v. California, 496 U.S. 128, 137 n.7 (1990)("[N]o amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' ")(quoting Coolidge v. New Hampshire, 403 U.S. 443, 468 (1971)); see also, Payton, 445

20

U.S. at 587-88 ("[A]bsent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional."). Therefore, we consider the arguments advanced by the Robinsons that exigent circumstances were not present when Officer Cox entered the backyard.

### 2. Exigent Circumstances

On brief, both George and Elisa argue that Officer Cox entered the backyard unlawfully because, even if he had probable cause, there were no exigent circumstances. George and Elisa further contend that, even if exigent circumstances did exist, such circumstances were manufactured by Officer Cox and thus did not justify his entry into the backyard.[4] George claims that at the moment when Officer Cox passed the path to the front door and entered the garage area, he could not have reasonably concluded that exigent circumstances were present because the suspects had not yet seen him approaching. George asserts Officer Cox entered the garage area for the express purpose of causing a panicked reaction among the juveniles, a

---

[4] Although Elisa presents this argument to this Court, the Court of Appeals' en banc opinion notes that during oral argument she conceded that "if Officer Cox was legitimately present on the driveway, his subsequent entry into the backyard would be permissible because the officer had both probable cause and exigent circumstances." Robinson, 47 Va. App. at 556 n.10, 625 S.E.2d at 662 n.10. However, because George also claims that Officer Cox manufactured the exigency in this case, we must consider this issue on appeal regardless of any concession by Elisa.

21

reaction Officer Cox himself described as "the effect when you flick on a light in a dark kitchen, and the cockroaches scatter." George states this provocative conduct caused the juveniles to panic and run and thereby created the exigent circumstances Officer Cox used to justify his warrantless entry.

A determination of whether exigent circumstances justify a warrantless entry is not based on an analysis of the circumstances considered in hindsight, but is focused on review of the "circumstances as they reasonably appeared to trained law enforcement officers to exist when the decision to enter was made." Verez v. Commonwealth, 230 Va. 405, 411, 337 S.E.2d 749, 753 (1985) (quoting Keeter v. Commonwealth, 222 Va. 134, 141, 278 S.E.2d 841, 846 (1981)). The test for whether exigent circumstances were present is "fact-specific," Minnesota v. Olson, 495 U.S. 91, 100 (1990), and we have not previously attempted to delineate a "final and comprehensive list of all exigent circumstances which might justify a warrantless entry." Verez, 230 Va. at 410, 337 S.E.2d at 753. We have, however, recognized that the following factors have been considered relevant by other courts:

> (1) the degree of urgency involved and the time
> required to get a warrant; (2) the officers'
> reasonable belief that contraband is about to be
> removed or destroyed; (3) the possibility of danger
> to others, including police officers left to guard

22

the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

Id. at 410-11, 337 S.E.2d at 753 (citations omitted).

Officer Cox testified that after the juveniles observed him in his vehicle, they yelled "cops," dropped their beer bottles, and began running toward the woods behind the house. When Officer Cox pulled his car into the garage area, he could still see "kids running towards the woods." He could also see patio furniture covered with beer bottles, "[b]eer bottles spread throughout the yard, and kids running away."

Officer Cox stepped out of his vehicle and "yelled for everybody to stop," but "[n]obody did." He then entered the backyard to locate the juvenile hosting the party. Officer Cox indicated that his intent was to "find out what was going on," and that he was concerned about the juveniles' safety and "wanted to find out who they were, so [the police] could contact parents."

Based on this testimony, we conclude that exigent circumstances justified Officer Cox's entry into the garage

23

area and the backyard.  At that time, he had already observed the juveniles consuming alcoholic beverages at the party.  Had Officer Cox left the property to obtain a warrant after the juveniles began to run from the yard, there is a high probability that evidence of the crimes would have been destroyed by the time he returned.  Moreover, given the number of cars parked on the street and in the driveway, Officer Cox could reasonably have believed that a number of juveniles in attendance may have been inebriated and could have injured themselves or others, either by running into the woods at night or by attempting to drive away from the residence.  These factors constituted exigent circumstances and justified Officer Cox's warrantless entry into the backyard.[5]

We find no merit in the argument that Officer Cox manufactured the exigency.  As discussed earlier, Officer Cox's testimony establishes that he first identified juveniles

---

[5] Other courts have determined that exigent circumstances may be created by unsupervised juveniles who are under the influence of alcohol.  See, e.g., Radloff v. City of Oelwein, 380 F.3d 344, 348 (8th Cir. 2004) ("Exigent circumstances existed both because of the loud noise created by the party and because of the threat to public safety if the juveniles left the house in cars while under the influence of alcohol."); Huset v. City of Roseville, No. 05-295, 2006 US Dist. LEXIS 60165, *12 (D. Minn. 2006) (finding that exigent circumstances existed when officers found juveniles drinking at a party, and noting " 'it would have been unreasonable . . . to quarantine the juveniles' cars during the period of time [it] would have taken to obtain a warrant' ") (quoting Radloff, 380 F.3d at 348).

holding beer bottles when he was in his vehicle at a point before the driveway intersected the path to the front door, and that the juveniles observed him and began to run away when he was still "approximately in [that] location."

Although there is no direct testimony regarding the period of time that elapsed between Officer Cox's sighting of the juveniles and the time that they, in turn, observed him and began to run, Officer Cox's testimony suggests that any intervening time period was negligible. As the Court of Appeals stated, the "development of probable cause and the creation of exigencies were virtually contemporaneous." Robinson, 47 Va. App. at 561-62, 625 S.E.2d at 665. Given that there was no significant period of time between the moment Officer Cox first saw illicit activity and the occurrence of the ensuing exigencies, we agree with the Court of Appeals' holding that Officer Cox did not have a meaningful opportunity to leave the Robinsons' property to obtain a warrant before proceeding further.

As other courts have recognized, the lack of such opportunity to secure a search warrant strongly counsels against a conclusion that the police manufactured exigent circumstances. See, e.g., United States v. Rico, 51 F.3d 495, 502-03 (5th Cir. 1995) (rejecting manufactured exigency argument because officers "clearly lacked sufficient time

between the point at which the circumstances that the agents claim motivated them to enter [one] residence and the point at which probable cause to enter [a second] residence developed"); United States v. Webster, 750 F.2d 307, 327 (5th Cir. 1984) ("Our first concern in analyzing a claim of manufactured exigency is whether agents could have obtained a search warrant prior to the development of the exigent circumstances upon which they relied.").  To suggest that an officer under the present circumstances was required to leave the property to obtain a warrant or to approach the front door to question the occupants ignores the reality of the situation, namely, that the evidence of juveniles consuming alcohol on the premises would have been destroyed or otherwise compromised, and that the juveniles and possibly other motorists could have been injured, in the absence of immediate and direct action.  Accordingly, we reject the Robinsons' arguments that Officer Cox's warrantless search was undertaken in the absence of probable cause and exigent circumstances.

CONCLUSION

For the reasons expressed, we will affirm the judgment of the Court of Appeals.

Record No. 060417   Affirmed.
Record No. 060426   Affirmed.