COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Kelsey and Beales
Argued at Richmond, Virginia


RUSSELL SOURDIFF

v.      Record No. 2854-07-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE JEAN HARRISON CLEMENTS
DECEMBER 9, 2008


FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
James F. D'Alton, Jr., Judge

Paul S. Roskin (Vergara & Associates, on briefs), for appellant.

Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


Russell Sourdiff (appellant) was convicted in a bench trial of possessing cocaine in

violation of Code § 18.2-250 and possessing marijuana in violation of Code § 18.2-250.1. On

appeal, appellant contends the trial court erred in denying his motion to suppress the cocaine and

marijuana found in his possession. Finding no error, we affirm the trial court's judgment and

appellant's convictions.

As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  BACKGROUND

On appeal of a denial of a motion to suppress, we consider the evidence adduced at both the suppression hearing and the trial, DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987), and we view it in the light most favorable to the Commonwealth, the party prevailing below, Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). So viewed, the evidence shows that on October 5, 2006, an officer of the Hopewell Police Department responded to a report of a domestic disturbance at the residence of Michael Yates. When the officer arrived at the residence, Yates, who owned the home, was sitting on the front porch and his girlfriend, Brenda Newcomb, was standing in the front yard. The officer approached Yates, with whom he was familiar from previous contact. Yates stated that he and Newcomb had fought earlier that day. As part of his investigation, the officer discovered that appellant had been present at the time of the disturbance. Yates told the officer that appellant rented a room in Yates's home and that he was currently inside the house.

The officer asked to speak with appellant as a witness to the domestic disturbance. Yates consented, allowing the officer into the house and leading him through the living room and toward an adjacent interior door that was "open a few feet." There were no apparent locks or signs on the door or other indications of individual occupancy, and Yates led the officer into the room without stopping or knocking.

The room was a bedroom. Appellant appeared to be asleep, fully clothed, on the bed, and Yates and the officer successfully roused him. As they did so, the officer noticed in plain view on the nightstand what appeared to him to be a marijuana cigarette. He also saw on a dresser a corner of a "clear plastic sandwich baggie" containing what appeared to him to be cocaine residue. Based on the discovery of those items of contraband, the officer placed appellant under

- 2 -

arrest. During a search incident to the arrest, the police officer found cocaine on appellant's person.

At the suppression hearing, appellant challenged the admissibility of the cocaine and marijuana on grounds that the officer's warrantless entry into his room and the resultant discovery and seizure of such evidence violated his Fourth Amendment rights. Concluding that the officer's entry into appellant's room and discovery of the contraband in plain view did not violate appellant's Fourth Amendment rights, the trial court denied appellant's motion to suppress. Appellant was thereafter convicted of the charges against him, and this appeal followed.

## II. ANALYSIS

"In considering the trial court's denial of a motion to suppress, the burden is on appellant to show that the court's ruling constituted reversible error." Robinson v. Commonwealth, 31 Va. App. 479, 483, 524 S.E.2d 171, 172 (2000). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges *and local law enforcement officers*." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (emphasis added). However, we review *de novo* the trial court's application of defined legal standards. Id.

The Fourth Amendment to the Federal Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Accordingly, "[w]hen government agents conduct a search or seizure within protected areas of a dwelling without a warrant[,] such actions are presumptively unreasonable," Robinson v. Commonwealth, 273 Va. 26, 34, 639 S.E.2d 217, 221 (2007) (citing Payton v. New York, 445 U.S. 573, 586-87 (1980)), "subject to a few specifically established and well-delineated exceptions," Megel v. Commonwealth, 262 Va. 531, 534, 551 S.E.2d 638, 641 (2001).

- 3 -

One such exception "to the general rule that warrantless searches and seizures are presumptively unreasonable" is the "plain view doctrine." Harris v. Commonwealth, 241 Va. 146, 152, 400 S.E.2d 191, 195 (1991). In order to invoke the plain view doctrine to support the seizure of an item of contraband, the officer must be "lawfully in a position to see the item." Commonwealth v. Ramey, 19 Va. App. 300, 303, 450 S.E.2d 775, 777 (1994).

Appellant asserts that he was in a constitutionally protected place at the time the officer entered his room and discovered the contraband in plain view. Appellant contends that because he did not explicitly consent to the entry, the officer was not permitted to enter the room without a warrant. Thus, appellant concludes, the officer was not lawfully in a position to see the contraband and the evidence seized should have been suppressed. We disagree.

A search or seizure that might otherwise violate the constitutional rights of an accused

> may be deemed reasonable when conducted pursuant to voluntary consent offered not by the defendant himself but by a third party who shares access to the premises or object being searched with the defendant. "The authority which justifies the third-party consent . . . rests . . . on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."

Glenn v. Commonwealth, 275 Va. 123, 130-31, 654 S.E.2d 910, 913 (2008) (omissions in original) (quoting United States v. Matlock, 415 U.S. 164, 171 n.7 (1974)).

However, "even if the party giving consent does not have actual authority to consent, 'apparent authority' may be sufficient, if the circumstances would lead a reasonable officer to conclude that the person providing consent had the requisite authority to do so." Bryant v. Commonwealth, 39 Va. App. 465, 471, 573 S.E.2d 332, 335 (2002) (citing Caldwell v. Commonwealth, 15 Va. App. 540, 542, 425 S.E.2d 534, 535-36 (1993)). Indeed, as we stated in Caldwell, "[a] warrantless entry does not violate the Fourth Amendment's proscription of

- 4 -

unreasonable searches and seizures when it is based upon the consent of a third party whom the police, at the time of entry, reasonably believe to possess common authority over the premises, even though that party does not, in fact, possess such authority." 15 Va. App. at 542, 425 S.E.2d at 535 (citing Illinois v. Rodriguez, 497 U.S. 177, 186 (1990)). The doctrine of apparent authority will operate to validate an otherwise unlawful entry only where the facts available to the officer at the time of the entry are such that "'warrant a [person] of reasonable caution in the belief that the consenting party had authority over the premises.'" Id. at 543, 425 S.E.2d at 536 (quoting Rodriguez, 497 U.S. at 188). "Thus, as in all Fourth Amendment cases, the touchstone here is 'reasonableness under the facts and circumstances of the case.'" Bryant, 39 Va. App. at 471, 573 S.E.2d at 335 (quoting Weathers v. Commonwealth, 32 Va. App. 652, 658, 529 S.E.2d 847, 850 (2000)). The issue whether an officer reasonably believed at the time of the entry that the consenting party had authority over the premises is a factual question to be determined by the finder of fact. See, e.g., id. at 475, 573 S.E.2d at 337 (finding the evidence sufficient to support the trial court's factual determination that "at the time he conducted the search, [the police officer] reasonably believed that [the person to whom a hotel room was registered] possessed the requisite authority to offer consent" to search the entire room); Caldwell, 15 Va. App. at 543, 425 S.E.2d at 536 (finding the record supports the trial court's factual determination that the police officers who entered and searched the appellant's residence "acted reasonably in believing that [the appellant's sister] had general control over the property and the authority to consent to their entry and search").

Implicit in the trial court's conclusion in this case that the officer's entry into the room where the cocaine and marijuana were discovered did not violate appellant's Fourth Amendment rights is the finding that the officer reasonably believed, at the time he entered the room, that Yates had the authority to consent to his entry of that room. Upon reviewing the record, we cannot say that this factual determination is plainly wrong or without evidence to support it.

After informing the officer that appellant had witnessed the earlier domestic disturbance being investigated by the officer, Yates told the officer that appellant rented a room in Yates's home and that he was currently inside the home. Yates then volunteered to take the officer into the home to see appellant. There is no evidence that the officer should have been aware when he and Yates entered the house which particular room was being rented by appellant or even that appellant would necessarily be found only in his room at the time. Once inside the home, Yates led the officer purposefully through the common area to a half-open door displaying no visible indicators that it separated the common area from an area to which Yates could not authorize access. Without pausing to knock or announce himself, Yates led the officer through the door and into appellant's room.

We conclude that, viewed within the context of the information available to the officer, the peremptory manner in which Yates gained access to the room—unannounced and without knocking despite knowing appellant was present—would lead a reasonable person to believe that the room beyond was under Yates's control as well. Hence, we find the evidence sufficient to support the finding that the officer reasonably believed Yates had authority to consent to his entry of the room and find nothing plainly wrong with that finding. We hold, therefore, that the officer's presence in the room was lawful and that, as a result, the seizure of the marijuana and cocaine discovered in the room in plain view did not violate appellant's Fourth Amendment rights.

Accordingly, we affirm the trial court's denial of the motion to suppress and appellant's convictions.

Affirmed.

Beales, J., dissenting.

I respectfully dissent from the majority opinion. I would find that the trial court erred when it denied appellant's motion to suppress the drugs recovered by the police after entering appellant's rented room without obtaining his permission (as tenant of the property), without having a warrant, and without receiving permission from someone with either actual or apparent authority to permit entry into the rented room. Therefore, I would reverse his convictions and remand them for retrial, if the Commonwealth were so inclined.

Here, as the majority opinion quite correctly points out, under the Fourth Amendment, the officer's warrantless entry into appellant's residence, a room that he rented within Yates's home, was "presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980); Robinson v. Commonwealth, 273 Va. 26, 34, 639 S.E.2d 217, 221, cert. denied, 127 S. Ct. 2442 (2007). However, the majority then finds that the officer had apparent authority from appellant's landlord to enter the room, and, therefore, the entry was lawful under Bryant v. Commonwealth, 39 Va. App. 465, 471, 573 S.E.2d 332, 335 (2002), Caldwell v. Commonwealth, 15 Va. App. 540, 542, 425 S.E.2d 534, 535-36 (1993), and Illinois v. Rodriguez, 497 U.S. 177, 186 (1990). However, I find these cases inapplicable to the facts presented by this case.

These cases do support the basic premise that police may enter property if they have a reasonable belief that the person giving them permission to enter has authority to grant that permission, a concept referred to as apparent authority. However, these cases do not lead to the conclusion reached by the majority that the policeman here properly assumed that Yates had authority to give him permission to enter a room that Yates had previously told the officer was rented out to appellant.

Depending on the facts confronting an officer, the belief that a person has authority to grant entrance to a home may not be reasonable.

- 7 -

> A person on the scene who identifies himself, say, as a landlord or a hotel manager calls up no customary understanding of authority to admit guests without the consent of the current occupant. See Chapman v. United States, [365 U.S. 610 (1961)] (landlord); Stoner v. California, 376 U.S. 483, 84 S. Ct. 889, 11 L. Ed. 2d 856 (1964) (hotel manager). A tenant in the ordinary course does not take rented premises subject to any formal or informal agreement that the landlord may let visitors into the dwelling, Chapman, supra, at 617, 81 S. Ct. 776, 5 L. Ed. 2d 828, and a hotel guest customarily has no reason to expect the manager to allow anyone but his own employees into his room, see Stoner, supra, at 489, 84 S. Ct. 889, 11 L. Ed. 2d 856; see also United States v. Jeffers, 342 U.S. 48, 51, 72 S. Ct. 93, 96 L. Ed. 59 (1951) (hotel staff had access to room for purposes of cleaning and maintenance, but no authority to admit police). In these circumstances, neither state-law property rights, nor common contractual arrangements, nor any other source points to a common understanding of authority to admit third parties generally without the consent of a person occupying the premises. And when it comes to searching through bureau drawers, there will be instances in which even a person clearly belonging on premises as an occupant may lack any perceived authority to consent; "a child of eight might well be considered to have the power to consent to the police crossing the threshold into that part of the house where any caller, such as a pollster or salesman, might well be admitted," 4 LaFave § 8.4(c), at 207 (4th ed. 2004), but no one would reasonably expect such a child to be in a position to authorize anyone to rummage through his parents' bedroom.

Georgia v. Randolph, 547 U.S. 103, 112 (2006).

Here, the officer was investigating a crime involving Yates. In the processes of that investigation, the officer learned that appellant rented a room in Yates's house and that appellant was a potential witness to the crime. In his testimony, the officer said that he "asked if [he] could speak with [appellant], if [Yates] could lead [him] to" appellant. Yates then "allow[ed]" the officer into the house, "took" him to a room, and walked through a partially opened door. Officer Waldrep walked into the room "right behind" Yates. It was immediately clear to the officer that they had entered a bedroom, and he observed appellant apparently sleeping on the bed. Officer Waldrep testified that, at first, he did not notice anything "out of the ordinary" in the bedroom – he simply observed appellant sleeping on a bed in the room or pretending to be

- 8 -

asleep. It was only after Yates could not awaken appellant, and after the officer had asked if he could attempt to awaken appellant, and after he had stepped further into the room to attempt to awaken appellant for himself that, finally, while he was "in the process of waking up" appellant, the officer noticed the drugs on the nightstand and the dresser.[1]

Officer Waldrep did not testify that Yates explicitly gave him permission to enter the bedroom. Instead, the officer testified that Yates had informed him that he was renting a room to appellant, making Yates the landlord for the property and a person *without* authority to allow the officer into the room.[2] Id. Officer Waldrep knew nothing else about the nature of that rental agreement, and he did not ask Yates about their arrangements. Instead, he let Yates lead him to a bedroom, which the officer entered immediately upon Yates going in. However, again, Yates did nothing to indicate that he had any authority to allow anyone into the room, except that he entered it himself. Yates did nothing as he entered the room to indicate that he was giving Officer Waldrep permission to enter the room – Officer Waldrep just followed him and immediately knew it was a bedroom and saw appellant sleeping in the bed. Here, given appellant, as a tenant, rented a room within the home of his landlord, we essentially have "a house within a house," to which Fourth Amendment protections apply. Furthermore, the room that Officer Waldrep entered was not a common room, such as a kitchen or a living room.

---

[1] The Commonwealth has never argued that the officer could see the drugs before he entered appellant's bedroom.

[2] The Commonwealth argued on brief that this case is similar to Glenn v. Commonwealth, 275 Va. 123, 654 S.E.2d 910 (2008), but that case involved a grandson who was living with his grandfather as a guest, and the grandfather had given the police permission to search the grandfather's house. "Glenn d[id] not challenge [his grandfather's] authority to consent to a search of the entire house . . . ." Id. at 131, 654 S.E.2d at 913. Glenn did not involve a landlord/tenant relationship nor did it involve entry into a "home," i.e., the rented room here, which is given especially high protection under the Fourth Amendment. See Payton, 445 U.S. at 586. Instead, Glenn involved the search of a backpack about which the police had *no* ownership information other than it was in Glenn's grandfather's home. Glenn, 275 Va. at 133-34, 654 S.E.2d at 915.

- 9 -

Indeed, the landlord had already walked the officer through the living room before he entered appellant's rented room. The officer did not testify that he thought the room was the kitchen or some other common room. His testimony did indicate, however, that he knew immediately upon looking into the room that it was a bedroom in which appellant was lying on the bed – strong evidence to any reasonable person that this was the room that appellant rented from Yates.

The Supreme Court's decision in Rodriguez certainly does not appear to control the outcome here. Rodriguez simply held that an officer *could* legally enter a room if he reasonably believed that the person giving him permission to enter had authority to give that permission. 497 U.S. at 186. However, whether the officer truly had apparent authority to enter was not discussed in Rodriguez because the trial court had not addressed that issue, so the United States Supreme Court remanded the case to the Illinois court "for consideration of that question." Id. at 189. Therefore, Rodriguez does not address the factual question raised in the appeal before this Court.[3] However, the Supreme Court did express a relevant caution in Rodriguez:

> [W]hat we hold today does not suggest that law enforcement officers may always accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could

---

[3] The final paragraph of the Supreme Court's opinion in Rodriguez reads:

> In the present case, the Appellate Court found it unnecessary to determine whether the officers reasonably believed that Fischer [Rodriguez's former girlfriend] had the authority to consent, because it ruled as a matter of law that a reasonable belief could not validate the entry. Since we find that ruling to be in error, we remand for consideration of that question. The judgment of the Illinois Appellate Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

Rodriguez, 497 U.S. at 189.

- 10 -

> conceivably be such that a reasonable person would doubt its truth
> and not act upon it without further inquiry.

Id. at 188.

The Virginia cases cited in the majority opinion certainly do address the factual determination of whether the officer had apparent authority. However, again, these cases are readily distinguishable from the situation presented here to this Court. In Bryant, Officer Arnold went to the door of a hotel room, which was answered by Fred Klepsattel. 39 Va. App. at 469, 573 S.E.2d at 334. Mr. Klepsattel told the officer, truthfully, that the room was registered in his name. Id. The room was also registered to Bryant. Id. Officer Arnold asked Klepsattel for permission to search the room, and, according to the testimony at trial, Klepsattel responded by explicitly giving the officer permission to "'search the whole place.'" Id. This Court found, at minimum, Officer Arnold reasonably believed that Klepsattel had apparent authority to allow the officer to enter the hotel room because Klepsattel was in the room, told the officer that he was registered in the room, and none of the other people in the room contradicted Klepsattel's statements. Id. at 475, 573 S.E.2d at 337.[4]

Similarly, in Caldwell, Linda Patrick asked the police to investigate stolen property that she saw in her mother's house, as her mother was away in Texas at the time. 15 Va. App. at 541, 425 S.E.2d at 535. Ms. Patrick had the key to the house and explicitly gave two officers permission to enter, assuring them that "she had control over the property and authority to permit their entry." Id. When they entered the house, the officers did not know that Caldwell lived there. Id. This Court found the officers reasonably believed that Ms. Patrick had authority to let

---

[4] On appeal, Bryant's only question to this Court was whether Officer Arnold's trial testimony that Klepsattel said, "Yes, you can search the whole place," was hearsay. Id. at 472, 573 S.E.2d at 335. However, the opinion also addressed the issue of apparent authority.

them into the house and, therefore, found the trial court did not err in denying his motion to suppress. Id. at 543, 425 S.E.2d at 536.

Here, in contrast to both Bryant and Caldwell, Yates did not tell Officer Waldrep that he had authority to admit the officer into appellant's rented room. In fact, the information that Yates gave Officer Waldrep indicated that Yates probably *did not* have that authority, as Yates leased the room to appellant. Randolph, 547 U.S. at 112. While Yates might have had some authority to enter appellant's room himself, as evidenced by his own entry into the room, nothing suggested that Yates's authority to enter would extend to allow other people, especially the police, into appellant's rented room. See id. Finally, in stark contrast to Bryant and Caldwell, once the door to appellant's room was opened enough to enter the room, Officer Waldrep could clearly see that the room was appellant's bedroom – i.e., obviously the room rented by appellant from Yates. The officer should have suspected that Yates was leading him to appellant's room, as he had asked Yates to take him to appellant to talk about the domestic assault. However, once Yates entered the room, Officer Waldrep did not back up and ask if Yates had authority to let other people into appellant's room. Officer Waldrep instead walked further into the room in an attempt to wake appellant.[5] It was during this attempt to awaken appellant that he observed the marijuana and cocaine. As this Court held in Walls v. Commonwealth, 2 Va. App. 639, 645-46, 347 S.E.2d 175, 178-79 (1986), an open door does not constitute permission to enter a residence, especially where the officer does not explicitly ask for that permission.

---

[5] The Commonwealth has never argued that appellant was involved in the reported domestic disturbance to which the officer was responding, other than as a possible witness. The Commonwealth has also never argued that, prior to entering appellant's rented bedroom, the officer had probable cause to believe appellant was violating any law. The only rationale presented in this case to justify Officer Waldrep's entry into appellant's rented bedroom is the alleged apparent authority of Yates to consent to that entry.

I would find that no reasonable officer, when faced with all of the facts that confronted Officer Waldrep, would believe Yates legitimately gave him permission to enter the tenant's (i.e., appellant's) rented bedroom. This is especially true because Yates had informed the officer that appellant was renting a room in the house just before Yates took the officer into the house to meet appellant, leading the officer back to a room that was obviously a bedroom (once Yates fully opened the door and Officer Waldrep saw appellant asleep on a bed in the room). The officer had no warrant giving him authority to enter the rented room, and he never testified that Yates had explicitly given him permission to enter the tenant's (i.e., appellant's) rented room. Therefore, I would find the trial court erred in denying appellant's motion to suppress. Based on the foregoing facts and the relevant case law, I believe we must reverse the convictions and remand the case for retrial, if the Commonwealth is so inclined. As a result, I must respectfully dissent from the majority's opinion.